No. 22409.

ROBERT LEE BROWN *v.* THOMAS SPAIN, JR.

(466 P.2d 462)

Decided March 9, 1970. Rehearing denied April 6, 1970.

McNichols, Wallace, Nigro & Johnson, Roger F. Johnson, Jon F. Kidneigh, for plaintiff in error.

Burnett, Watson & Horan, William P. Horan, for defendant in error.

*In Department.*

Opinion by Mr. Justice Hodges.

In his complaint, Plaintiff Brown charged that Defendant Spain "negligently, carelessly and recklessly, and with a willful and wanton disregard for the rights of the Plaintiffs ..." drove a motor vehicle in such a way as to cause the plaintiff to be thrown from the rear trunk of the vehicle. After completion of the plaintiff's evidence, the trial court on the defendant's motion directed the jury to return a verdict in favor of the defendant on the grounds of contributory negligence and assumption of the risk by the plaintiff. From the trial court's judgment, the plaintiff brings this writ of error.

Our review of the record indicates that there are issues of fact which required determination by the jury. The trial court therefore erred in directing a verdict for the defendant. *Nettrour v. J. C. Penney Co.,* 146 Colo. 150, 360 P.2d 964. Accordingly, we reverse the judgment and remand the case for a new trial.

The events which gave rise to this action occurred approximately eight miles west of Brighton on the County Line Road. In the early evening hours of June 29, 1964, plaintiff Brown, his wife, his young brother-in-law, and defendant Spain and his date went fishing. The defendant used his automobile and drove the party of five down the County Line Road to the farm home of a neighbor to fish in his pond.

When the party ceased fishing and started to return to plaintiff's residence, they realized that the road on which the defendant had left his vehicle was too narrow to turn around on. The defendant decided to back up on the road to a spot where he could make the turn.

The testimony at this point becomes conflicting. Defendant testified he asked the plaintiff to guide him out so he wouldn't hit or run over anything. Plaintiff testified that he and defendant discussed his riding on the rear trunk while defendant was backing up. Defendant disputed that assertion and stated that plaintiff volun-

tarily jumped on the trunk while he was backing up.

Defendant backed up to a point near the neighbor's home and stopped so they could thank the neighbor for allowing them to fish. From this point, the vehicle was no longer driven in reverse. Plaintiff acknowledged that while parked in the yard of the farmhouse, his wife asked him to get in the car. The plaintiff's wife also testified that she asked plaintiff to get in the car because she was afraid he "would break his neck if he rode on the trunk." Defendant testified that the plaintiff said he would ride on the trunk, since it was but a short distance to his home. Plaintiff denied making any such statement and said he intended to get off before they pulled onto the County Line Road, and that he told the defendant "I will guide you out of here, but when we get to the County Line Road, stop and let me off, and I will get in the car." To this, the defendant answered "All right." The defendant denied that this conversation took place.

Thereafter, defendant drove away from the farmhouse and up to the County Line Road. Slowing his automobile as he approached the road, but without stopping, he turned left onto the road and began to accelerate. Defendant testified he accelerated to a speed of about 20 miles an hour and gently shifted into second gear. Plaintiff, on the other hand, testified:

". . . He got to the County Line Road and he did not come to a complete stop like he was supposed to do. He was still moving along. We got on the County Line Road and I yelled at him to stop the thing, to let me off, which he did not do. As I was seated back there and he was getting ready to shift the gears, I heard his mufflers wrap up, which were quite loud, and I tried to grab ahold of something to keep from flying off. I couldn't find anything. I guess he popped the gears and off I went."

The plaintiff's wife also testified that defendant "speed shifted" causing the car to jerk and throw the plaintiff off. The plaintiff was injured, spent several weeks in the hospital, and claims to have suffered brain damage.

At the close of the plaintiff's case, the defendant moved for dismissal of the complaint on the grounds that the plaintiff was guilty of contributory negligence and assumption of risk. The trial court granted this motion and directed a verdict in favor of the defendant.

In making his ruling, the trial judge stated:

"The Court finds, that viewing the plaintiff's case in the most favorable light, the plaintiff by assuming the position on the trunk of the car for the purpose of guiding a backing operation assumed all the risk attendant thereto, and upon arriving safely in the yard after experiencing the risk involved therein, and stopping for from two to three minutes in the yard, to continue to ride in this position was a reassumption of the risk, and it is not the activity of a reasonable and prudent person, and was also a negligent act upon his part, which contributed to the accident herein. Therefore, the Court finds that he was guilty of both assumption of the risk and negligence in his acts, and grants the motion for directed verdict."

This action was tried under the Colorado Guest Statute, C.R.S. 1963, 13-9-1, which provides:

"No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others. . . ."

 The purpose behind the Colorado Guest Statute was to preclude a guest from recovering for injuries resulting from negligence on the part of the owner or operator of a vehicle. A guest assumes the risk of negligence on the part of the owner or operator, but does not automatically carry the risk of willful and wanton acts or

omissions which go beyond the scope of the generally accepted meaning of negligence.

In order to recover, a guest must establish something more than negligence, such as an intentional tort, intoxication, or willful and wanton disregard of the rights of the guest.

As we view the plaintiff's complaint, the allegation that the defendant drove negligently, carelessly and recklessly was immaterial. The emphasis must be placed on that portion of the complaint which alleges the willful and wanton disregard of the rights of the plaintiff. This allegation expresses an element of culpability because it involves volition on the part of the host driver. In *Millington v. Hiedloff*, 96 Colo. 581, 45 P.2d 937, we held: ". . . Negligence, in its generally accepted meaning has in it no element of willfulness; but involves a state of mind which is negative; a state of mind in which the person fails to give attention to the character of his acts or omissions or to weigh their probable or possible consequences. *As used in the guest statute, the term 'negligence,' coupled with the elements of willfullness and wantonness, must be construed, not in its commonly accepted sense, but as a standard to determine whether there has been culpable conduct. . . .*" (Emphasis added.)

In *Pettingell v. Moede*, 129 Colo. 484, 271 P.2d 1038, we defined the term "willful and wanton disregard" as it appears in our Guest Statute in the following manner:
"One may be said to be guilty of 'wilful and wanton disregard' when he is conscious of his misconduct, and although have no intent to injure anyone, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result."

For additional authority distinguishing between negligence and willful and wanton conduct, see: *Adkisson v. City of Seattle*, 42 Wash. 2d 676, 258 P.2d 461; *Donnelly v. Southern Pacific Co.*, 18 Cal. 2d 863, 118 P.2d 465;

*Porter v. Hofman,* 12 Cal. 2d 445, 85 P.2d 447; *Long v. Foley,* 180 Kan. 83, 299 P.2d 63; *Williams v. Carr,* 68 Cal. Rptr. 305, 440 P.2d 505; 5 *Blashfield Automobile Law and Practice* § 213.4, at 169 (3d ed. 1966); Restatement (Second) *of Torts* § 500 and Special Note and comment (g) thereunder; and *F. Harper and F. James, The Law of Torts,* § 22.6, at 1214.

■ Defined another way, willful and wanton conduct is that which approaches but does not include an intentional tort nor can it be classified as such. *Deane v. Johnston,* 104 S.2d 3 (Fla.) 65 A.L.R.2d 957.

At the time the plaintiff rested his case in chief, it is clearly apparent that he had established a prima facie showing that the defendant was guilty of willful and wanton disregard of the plaintiff's rights and safety which was the proximate cause of his injury.

■ On a motion for a directed verdict, the trial court must view the evidence in a light most favorable to the party against whom the motion is directed. By applying this well-established rule, the testimony regarding the conduct of the defendant in "speed shifting" his vehicle with knowledge that the plaintiff was on the rear trunk, must be given credence by the trial court, and would be sufficient here to establish prima facie proof of the defendant's willful and wanton disregard for the rights of the plaintiff as alleged in his complaint. When the defendant was called for cross-examination, he testified that he gently shifted the gears when he drove onto the County Line Road, and he also, denied some of the other crucial aspects of the plaintiff's testimony, which in part was corroborated by the plaintiff's wife.

■ Therefore, on this threshold issue as to the degree of the defendant's fault, there was dispute which under the record of this case constitutes a factual issue for the jury to resolve as an initial matter before considering the plaintiff's fault, if any, which might be a bar to his recovery.

■ Next, as we analyze the evidence in this record,

it must also be said that when the trial court found, as a matter of law, that the plaintiff had assumed the risks involved, it overlooked the actual import and significance of the evidence when viewed in a light most favorable to the plaintiff. Because of the uniqueness of this fact situation, we believe assumption of risk on the part of the plaintiff is the pivotal and primary issue for consideration.

On this basis, it becomes immediately apparent that the evidence presented conflicting versions on the question of whether the plaintiff could be chargeable with assuming any risks beyond the point where the defendant drove his vehicle onto the County Line Road. If the plaintiff's evidence is viewed in the light most favorable to him, the evidence must be postured to reflect that the plaintiff intended to remove himself from the rear trunk at this point and that he had requested the defendant to stop before entering the County Line Road to permit him to get into the car. When the defendant failed to stop, can it be said as a matter of law that plaintiff continued beyond this point to assume the risks involved in riding on the rear trunk? We believe not. This was an issue of fact for the jury to determine.

On a motion for a directed verdict, in order for a trial court to hold, as a matter of law, that a guest assumed the risk of the driver's willful and wanton disregard for his safety, the evidence must conclusively show that the guest had or should have had knowledge and appreciation of the risk and had voluntarily accepted it. *Tuttle v. Longnecker*, 258 Iowa 393, 138 N.W.2d 851; 5 *Blashfield, supra*, § 215.6 at 307 and 309. On assumption of risk generally, see *Summit County Development Corp. v. Bagnoli*, 166 Colo. 27, 441 P.2d 658; *Gold v. Hlivyak*, 131 Cal. App.2d 39, 280 P.2d 71; *Restatement* (Second) *of Torts* §§ 496A through 496G.

In this record, there is no direct evidence or any facts from which it could be decisively inferred that the plaintiff knew or should have known that the defendant

would execute a speed shift after turning onto the County Line Road. It therefore follows that, as a matter of law, it could not be determined that the plaintiff voluntarily accepted and assumed the risk of this willful and wanton act on the part of the defendant. This also was an issue of fact for jury determination based upon all the evidence. Concededly, this issue would become important only if the jury determined that the plaintiff's assumption of risk continued beyond the point of entry of the vehicle onto the County Line Road.

In summary, the evidence as shown from this record reflects a number of issues of fact for jury determination. The trial court was therefore in error in granting the motion for a directed verdict at the conclusion of the plaintiff's evidence.

The judgment is reversed and the cause remanded to the trial court for a new trial.

MR. JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.