The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Ellsworth Fain MARCY,
Defendant-Appellant.

No. 80SA303.

Supreme Court of Colorado,
En Banc.

March 9, 1981.
Rehearing Denied May 26, 1981.

70

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Norman R. Mueller, Chief Appellate Deputy, Denver, for defendant-appellant.

QUINN, Justice.

■ This appeal challenges the constitutionality of subsection (1)(d) of the first degree murder statute, section 18–3–102, C.R.S. 1973 (1978 Repl. Vol. 8), which is commonly referred to as "extreme indifference murder." Ellsworth Fain Marcy (defendant) asserts that his conviction of first degree murder by extreme indifference under section 18–3–102(1)(d) violates equal protection of the laws, *U. S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, because that crime is not rationally distinguishable from either second degree murder, section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), or reckless manslaughter, section 18–3–104(1)(a), C.R.S.1973 (1978 Repl. Vol. 8). He also claims that the statutory definition of extreme indifference murder is unconstitutionally vague in violation of due process of law under the United States and Colorado Constitutions. *U. S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25. In addition to these constitutional issues he contends that the trial court erroneously denied his motion to disqualify the trial judge and improperly admitted into evidence a photograph of the deceased taken during an autopsy. We conclude that section 18–3–102(1)(d) violates equal protection of the laws under Article II, Section 25, of the Colorado Constitution [1] because the crime of

---

1. The right to equal protection of the laws is included within due process of law under Article II, Section 25, of the Colorado Constitution.

*E. g., Heninger v. Charnes,* Colo., 613 P.2d 884 (1980); *Vanderhoof v. People,* 152 Colo. 147,

first degree murder by extreme indifference is not sufficiently distinguishable from second degree murder to warrant the substantial differential in penalty authorized by the statutory scheme. We reverse the conviction and remand for a new trial for that reason. Because of our disposition of this issue, we do not address the other matters raised by this appeal.

## I.

The defendant was charged in an indictment filed in the El Paso County District Court with violation of two alternative subsections of the first degree murder statute: subsection 18–3–102(1)(a), murder after deliberation, and subsection 18–3–102(1)(d), murder by extreme indifference. The charges arose out of the shooting death of the defendant's wife at approximately 4:30 p. m. on December 2, 1978, in the family home. The defendant was employed as a nighttime dispatcher for the Fountain Police Department. For some time he had been experiencing depression over financial problems, his wife's affliction with multiple sclerosis, and the loss of parental control over their four teenage children. He spent the afternoon of the fatal shooting at home consuming a large quantity of beer and wine. During this period of time he contemplated suicide. After building a fire in the fireplace of the basement recreation room he went to the bedroom, removed from a drawer his fully loaded revolver, and returned to the family room where he called to his wife and she joined him there.

Thereafter the events can be reconstructed only inferentially.

The defendant testified that he was slipping in and out of a trance-like state shortly before the shooting and last remembers pointing the revolver in his wife's general direction while she told him not to cock the hammer. There was some evidence, albeit circumstantial, that the wife may have gained possession of the revolver before the shooting.[2] The defendant telephoned the sheriff's office to report the incident. A sheriff's officer responding to the scene observed Mrs. Marcy moaning in a recliner chair in the recreation room. Efforts to save her failed and she died of massive internal bleeding due to a gunshot wound through the liver. The defendant admitted the shooting to the sheriff's officers but claimed that he did not intend to shoot and may have put too much pressure on the trigger. A specimen of the defendant's blood indicated that his level of blood alcohol was 0.240 percent.

The court instructed the jury and submitted alternative verdicts on first degree murder after deliberation and first degree murder by extreme indifference, as well as the lesser included offenses of second degree murder, manslaughter and criminally negligent homicide. The jury returned a verdict of guilty to first degree murder by extreme indifference.[3] The defendant was sentenced to life imprisonment, section 18–1–105(1), C.R.S.1973 (1978 Repl. Vol. 8), and this appeal followed.

---

380 P.2d 903 (1963); *People v. Max*, 70 Colo. 100, 198 P. 150 (1921).

**2.** It was the defendant's theory that to prevent him from committing suicide his wife attempted to take the revolver from him and was accidentally shot in the process.

A forensic chemist testified regarding an analysis of Mrs. Marcy's hands which revealed the presence of a sufficient amount of barium and antimony to indicate at least the possibility that she handled the weapon with both hands and fired it with the right hand. However, there was also expert testimony indicating that she probably was in a sitting position and leaning slightly forward when shot. Still other expert testimony opined that Mrs. Marcy was partially reclined when shot with the revolver

positioned below her waist at a twenty degree angle upward.

**3.** The defendant also was charged in a separate count with the commission of a crime of violence. Section 16–11–309, C.R.S.1973 (1978 Repl. Vol. 8). The statutory procedures contemplate that upon the return of a guilty verdict on the substantive crime, the jury in connection therewith shall make a special finding as to whether the defendant used a deadly weapon during the commission of that crime. Section 16–11–309(2) includes first degree murder within the list of offenses qualifying as a crime of violence. The jury in this case returned a verdict of not guilty to the crime of violence charge.

## II.

The defendant argues that there is no rational distinction between first degree murder by extreme indifference as defined in section 18–3–102(1)(d), a class 1 felony punishable by life imprisonment, and second degree murder as defined in section 18–3–103(1)(a), a class 2 felony then punishable by a term of ten to fifty years.[4] The defendant maintains that the lack of any rational basis for distinguishing these offenses, coupled with the significant difference in penalty, renders his conviction of first degree murder by extreme indifference violative of equal protection by subjecting him to a more severe sanction for the identical criminal conduct proscribed by the lesser offense of second degree murder. Before addressing the merits of this claim, we set out some basic propositions of criminal and constitutional law as a predicate for our analysis.

■ The general purposes of the criminal law are several and include: the adequate definition of the act and mental state of each offense so that fair warning is given to all persons concerning the nature of the proscribed conduct and the penalties therefor, section 18–1–102(1)(a), C.R.S.1973 (1978 Repl. Vol. 8); the differentiation on reasonable grounds of the more serious from the less serious criminal conduct, section 18–1–102(1)(c), C.R.S.1973 (1978 Repl. Vol. 8); and the prescription of penalties that are proportionate to the seriousness of the offenses, section 18–1–102(1)(c), C.R.S.1973 (1978 Repl. Vol. 8). *See also Model Penal Code* § 1.02(1) and (2) (Tent. Draft No. 2, 1954).

■ In order to subject a person to criminal liability for his conduct, there generally must be a concurrence of an unlawful act (*actus reus*) and a culpable mental state (*mens rea*). *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *Morissette v. United States*, 342

U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Kent v. People*, 8 Colo. 563, 9 P. 852 (1886). With a few narrow exceptions, the sanctions of the criminal law are not imposed on the blameless. The minimum requirement for the imposition of criminal liability is that the criminal act be performed voluntarily or consciously. Sections 18–1–501(9) and 18–1–502, C.R.S.1973 (1978 Repl. Vol. 8); *Model Penal Code* § 2.01, Comment at 119 (Tent. Draft No. 4, 1955). While most crimes require a more blameworthy level of culpability—purposely, with specific intent, intentionally, knowingly, recklessly or negligently—the matter of establishing the legal constituents of criminal liability is a uniquely legislative function. *E. g., Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *People v. Ledman*, Colo., 622 P.2d 534 (1981).

■ It is worth repeating here that "it is not the role of this court to act as overseer of all legislative action and declare statutes unconstitutional merely because we believe they could be better drafted or more fairly applied." *People ex rel. Russel v. District Court*, 185 Colo. 78, 81, 521 P.2d 1254, 1255 (1974). On the other hand, we cannot disregard our responsibility to the rational and evenhanded application of the law under our state system of criminal justice. Equal protection of the laws under the Fourteenth Amendment to the United States Constitution is not necessarily the limit of that responsibility. *See, e. g., Charnes v. Digiacomo*, Colo., 612 P.2d 1117 (1980); *Denver v. Nielson*, 194 Colo. 407, 572 P.2d 484 (1977); *People v. Hoinville*, 191 Colo. 357, 553 P.2d 777 (1976); *People ex rel. Juhan v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968); *see also*, Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489 (1977); Howard, *State Courts and Constitutional Rights in the Day of the Burger Court*, 62 Va.L.Rev. 873 (1976); Note, *The New Federalism: Toward a Principled In-*

---

**4.** Effective July 1, 1979, the penalty for first degree murder is life imprisonment or death, and the presumptive penalty for second degree murder is 8 to 12 years plus 1 year of parole with provisions for reducing the minimum to 4 years in the case of extraordinary mitigating circumstances and for increasing the maximum to 24 years in the case of extraordinary aggravating circumstances. Section 18–1–105(1)(a) and (6), C.R.S.1973 (1980 Supp.).

*terpretation of the State Constitution*, 29 *Stan.L.Rev.* 297 (1977).

In *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755. (1979), the United States Supreme Court held that the prosecution and punishment of an accused for criminal conduct (receipt by a convicted felon of a firearm that had traveled in interstate commerce) that was identically defined but differently punished (five year and two year maximums) under separate sections of a statutory scheme did not violate equal protection of the laws under the Fourteenth Amendment to the United States Constitution.[5] In sharp contrast to *Batchelder*, we have held consistently that equal protection of the laws requires that statutory classifications of crimes be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation. *E. g., People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978); *People v. Czajkowski*, 193 Colo. 352, 568 P.2d 23 (1977); *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975).

"Equal protection of the law is a guarantee of like treatment of all those who are similarly situated. Classification of persons under the criminal law must be under legislation that is reasonable and not arbitrary. There must be substantial differences having a reasonable relationship to the persons involved and the public purpose to be achieved." *People v. Calvaresi*, 188 Colo. at 281–82, 534 P.2d at 318.

Other states in like manner have concluded that duplicative criminal statutes imposing different penalties for identical conduct irrationally discriminate against an accused in violation of equal protection. *E. g., State v. Chavez*, 77 N.M. 79, 419 P.2d 456 (1966); *Spillers v. State*, 84 Nev. 23, 436 P.2d 18 (1968); *State v. Pirkey*, 203 Or. 697 281 P.2d 698 (1955); *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969). The requirement of reasonable classification in legislative proscriptions enhances the evenhanded application of the law in the process of judicial adjudication. *See generally* Comment, *Prosecutorial Discretion In the Duplicative Statutes Setting*, 42 *Colo.L.Rev.* 455 (1971); Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws*, 61 *Colum.L.Rev.* 1103 (1961).

Under recent pronouncements of this court equal protection of the laws is violated if different statutes proscribe the

5. The court in *Batchelder* recognized that selectivity in the enforcement of criminal laws is subject to constitutional restraints. However, it concluded that the prosecutor's decision to proceed under the five year statute, 18 U.S.C. § 924(a), did not result in a predetermination of ultimate criminal sanctions but merely enabled the sentencing judge to impose a longer term than authorized by the two year statute, 18 U.S.C.App. § 1202(a).

The statutory scheme applicable here differs from that involved in *Batchelder* by impacting to a much greater extent the major features of the criminal justice system. For example, the lack of any rational basis for distinguishing the substantive elements of the offenses gives rise to problems not merely in prosecutorial choice of penalty but also in prosecutorial selection between substantive crimes not legislatively intended to be interchangeable. Furthermore, where rationality in distinction between offenses is lacking, there is *pro tanto* a diminution of those intelligible and uniform standards of adjudication essential to the reliability of the fact finding process and the evenhanded application of the law.

When viewed from the standpoint of penalty only, the statutory proscriptions in this case differ markedly from those in *Batchelder*. Here, the penalty scheme creates substantial differences in both the minimum and maximum terms of confinement for the two crimes. On the date of the offense extreme indifference murder was punishable by life imprisonment and second degree murder by a term of ten to fifty years. Section 18–1–105(1), C.R.S.1973 (1978 Repl. Vol. 8). Under the penalty scheme that went into effect on July 1, 1979, extreme indifference murder presently is punishable by life imprisonment or death and second degree murder by a presumptive penalty of eight to twelve years, plus one year of parole. Section 18–1–105(1)(a), C.R.S.1973 (1980 Supp.). When extraordinary mitigating circumstances exist, second degree murder is punishable by a penalty not less than one half the minimum term authorized in the presumptive range, and where extraordinary aggravating circumstances exist by a penalty not more than twice the maximum term in the presumptive range. Section 18–1–105(6), C.R.S.1973 (1980 Supp.).

same criminal conduct with disparate criminal sanctions. *See, e. g., People v. Westrum,* Colo., 624 P.2d 1302 (1981); *People v. Taggart,* Colo., 621 P.2d 1375 (1981); *People v. Burns,* 197 Colo. 284, 593 P.2d 351 (1979); *People v. Marshall,* 196 Colo. 381, 586 P.2d 41 (1978); *People v. Smith,* 193 Colo. 357, 566 P.2d 364 (1977); *People v. Czajkowski, supra; People v. Hulse,* 192 Colo. 302, 557 P.2d 1205 (1976); *see also Trueblood v. Tinsley,* 148 Colo. 503, 366 P.2d 655 (1961). Similarly, separate statutes proscribing with different penalties what ostensibly might be different acts, but offering no intelligent standard for distinguishing the proscribed conduct, run afoul of equal protection under state constitutional doctrine. *See, e. g., People v. Bramlett, supra; People v. Dominquez,* 193 Colo. 468, 568 P.2d 54 (1977); *People v. Calvaresi, supra.* It is within the framework of these principles that we consider the defendant's equal protection claim under Article II, Section 25, of the Colorado Constitution.

### III.

■ Section 18–3–102(1)(d) provides that a person commits the crime of murder in the first degree if:

> "Under circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another."

Section 18–3–103(1)(a) states that a person commits the crime of murder in the second degree if "[h]e causes the death of a person knowingly, but not after deliberation."[6] The evil consequence proscribed by extreme indifference murder under section 18–3–102(1)(d) and second degree murder under section 18–3–103(1)(a) is the same—the death of a person. If a valid basis for distinguishing these crimes exists, it must be found in either the culpability elements of each offense or in the added component of acting "under circumstances manifesting extreme indifference to the value of human life," which is required for first degree murder under section 18–3–102(1)(d). As originally enacted these crimes were defined in terms of discrete elements of culpability which provided an adequate basis of distinction and permitted a reliable adjudication of criminal responsibility. However, as discussed in Part IV, *infra,* no such basis exists under the present statutory scheme.

Both extreme indifference murder and second degree murder were first enacted as part of the Colorado Criminal Code which went into effect on July 1, 1972. As originally enacted both offenses required the culpable mental state of "intentionally".[7] Colo.Sess.Laws 1971, ch. 121, 40–3–102(1)(d) and 40–3–103(1)(a) at 418. Under the Colorado Criminal Code second degree murder was a specific intent crime. *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977). Effective July 1, 1977, the culpability requirements for both offenses were amended to "knowingly". Colo.Sess.Laws 1977, ch. 224, 18–3–102(1)(d) and 18–3–103(1)(a) at 960. The General Assembly made clear the purpose underlying this amendment: "All offenses defined in this code in which the mental culpability is expressed as 'knowingly' or 'willfully' are de-

---

**6.** Section 18–3–101(3), C.R.S.1973 (1978 Repl. Vol. 8), defines "after deliberation" as meaning "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner."

The term "but not after deliberation" in section 18–3–103(1)(a) does not describe the culpable mental state for second degree murder. The term "knowingly" does describe the requisite culpability for that crime. The purpose of the term "but not after deliberation" is un-

doubtedly to describe what second degree murder is *not* rather than what it is. *See Sawyer v. People,* 173 Colo. 351, 478 P.2d 672 (1970).

**7.** 1971 Perm.Supp., C.R.S.1963, 40–1–601(6), defined "intentionally" as follows:

"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his conscious object is to cause that result or to engage in that conduct or when his actions are such as to give rise to a substantial certainty that such results will be produced."

clared to be general intent crimes." Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8).

The statutory definition of "extreme indifference murder" in section 18–3–102(1)(d) is aimed at the same type of death-causing conduct epitomized by what was previously described as "universal malice." At common law murder was the unlawful killing of a human being with malice aforethought. *O. Warren, Homicide* § 63 at 248 (Perm. Ed. 1914); *F. Wharton, The Law of Homicide* § 2 at 2 (3d ed. 1907). The requisite of malice included not only an intent to kill or endanger a particular person, but also "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences," and a "general malignity and reckless disregard of human life." *O. Warren, supra,* § 66 at 268, 271; *see also F. Wharton, supra,* § 81 at 97–98. Since its early days of statehood Colorado recognized this principle by proscribing as first degree murder any killing "perpetrated by any act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life." C.R.S.1963, 40–2–3; *see* C.R.S.1953, 40–2–3; 1935 C.A.S., ch. 48, § 32; C.L. 1921, § 6665; C.S.A. 1911, § 1624; R.S. 1908, § 1624; M.A.S. 1891, § 1176.

In *Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909), this court considered the type of conduct encompassed by the statutory prohibition in existence prior to the enactment of the Colorado Criminal Code in 1971:

"Every act that results in the death of a person is greatly dangerous to the life of such person, but the statute . . . is intended to include those cases where a person has no deliberate intention to kill any particular person. In other words, when a person kills another by an act which is greatly dangerous to the lives of others, and which shows a depraved mind regardless of human life, he is guilty of murder in the first degree; not because he has atrociously murdered a particular individual, but because his act has evinced universal malice, a malice against mankind in general.

\* \* \* \* \* \*

"We think the legislature . . . intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called 'universal malice'. By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim." *Id.* at 176, 180–81, 102 P. at 166, 168.

We first examined extreme indifference murder under the Colorado Criminal Code, 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(d), in *People ex rel. Russel v. District Court, supra,* decided in 1974. The statutory definition at that time corresponded to its present analogue except for the 1977 amendment replacing "intentionally" with "knowingly". Colo.Sess.Laws 1977, ch. 224, § 5 at 960. The issue in *People ex rel. Russel* was whether extreme indifference murder was void for vagueness as indistinguishable from second degree murder. We distinguished extreme indifference murder from second degree murder by employing an analysis similar to that employed in *Longinotti v. People, supra* :

"As we read the section in question, the element which distinguishes it from second-degree murder is that the latter degree requires that the perpetrator possess the intent to take the life of a particular person while this first-degree murder statute does not. The element of 'extreme indifference to human life,' by definition, does not address itself to the life of the victim, but to human life generally. Conversely, though the statute requires that the conduct which creates a grave risk of death be intentional, the use of 'intentionally' here does not necessarily mean that the intent be to take the life of a particular person. Indeed, if such were the case, there would be but little difference between this statute and the other sections of the first-degree murder statute, *see* 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(a). Furthermore, our statutes

define 'intentionally' as 'when his conscious object is to cause that result or to engage in that conduct,' 1971.Perm.Supp., C.R.S.1963, 40–1–601(6), which we read to mean that the conduct creating the grave risk of death be consciously done.

"Again, in contrast, the second-degree murder statute states in part that 'he cause the death of a person *intentionally*, but without premeditation.' 1971 Perm. Supp., C.R.S.1963, 40–3–102(1)(a). We believe the only construction which that phrase can be given is that the intent be to cause the death of a *particular* person. Otherwise, there would be no need to distinguish between 1971 Perm.Supp., C.R.S. 1963, 40–3–102(1)(a), which by definition is the premeditated taking of *a* person's life, and second degree murder." *Id.* at 83–84, 521 P.2d at 1256–57.

The result in *People ex rel. Russel* is sound primarily because, under the then existing statutory scheme, second degree murder was a specific intent crime. 1971 Perm. Supp., C.R.S.1963, 40–3–103(1)(a); *Cornelison v. People, supra.*

*People v. Jones*, 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed*, 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), extended the scope of extreme indifference murder to a situation where the defendant caused the death of his female acquaintance by what ostensibly was an intentional stabbing. On appeal the defendant contended that "the facts of the case do not evince . . . [a] depraved mind or universal malice" required for murder by extreme indifference. *Id.* at 250, 565 P.2d at 1336. The *Jones* opinion rejected this argument and stated that the statutory proscription was not exclusively limited to conduct that greatly endangers many persons but encompasses conduct that creates a grave risk of death to a single person. Although the application of the statute to the disputed facts there present constituted a significant departure from the narrow construction of *People ex rel. Russel v. District Court, supra, Jones* did acknowledge that the requisite culpability for extreme indifference murder was substantively distinct from the culpability requirements for other criminal homicides.

Under the initial statutory scheme the *mens rea* for extreme indifference murder—intentionally engaging in conduct which creates a grave risk of death—was not bottomed in the result of the act but in the conduct. The culpability contemplated by the statutory definition of the crime, 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(d), was not a specific intent to kill, but rather consisted of a conscious awareness that the conduct created a life endangering risk to another. *People ex rel. Russel v. District Court, supra.* Murder in the second degree required a specific intent to kill, that is, a conscious object to cause the death of another. 1971 Perm.Supp., C.R.S. 1963, 40–3–103(1)(a); *People v. Cornelison, supra; People ex rel. Russel v. District Court, supra.* First degree murder after deliberation required both a specific intent to kill and a decision to kill "made after the exercise of reflection and judgment concerning the act." Sections 18–3–101(3) and 18–3–102(1)(a), C.R.S.1973 (1978 Repl. Vol. 8); Colo.Sess.Laws 1974, ch. 52, 40–3–101(1)(c) and 40–3–102(1)(a) at 251.

Thus, while *Jones* construed the statutory definition of extreme indifference murder to include conduct that created a grave risk of death "to a single person," the statutory culpability for the crime remained nevertheless categorically distinct from the culpable mental states for other criminal homicides. Statutory discreteness in culpability, however, was significantly altered in 1977 when the *mens rea* for second degree murder was changed from a specific intent to a general intent—causing "the death of a person knowingly." Section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8).

### IV.

██ By virtue of the 1977 amendment to the Colorado Criminal Code "knowingly" was substituted for "intentionally" in section 18–3–102(1)(d). Colo.Sess.Laws 1977, ch. 224, 18–3–102(1)(d) at 960. The elements of extreme indifference murder, as applicable to this case, are therefore: (1)

under circumstances manifesting extreme indifference to the value of human life; (2) knowingly engaging in conduct that creates a grave risk of death to another; and (3) thereby causing the death of another. Second degree murder was likewise reduced to a general intent crime by deleting "intentionally" and substituting "knowingly". Colo.Sess.Laws 1977, ch. 224, 18–3–103(1)(a) at 960. As provided in section 18–3–103(1)(a), second degree murder consists of causing the death of a person knowingly. Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8), defines knowingly or willfully as follows:

"A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists. A person acts 'knowingly' or 'willfully', with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause that result."

 Upon close scrutiny of the culpability elements of each offense, both of which mandate that the death-causing act be done "knowingly", we are unable to find any rational basis of distinction between first degree murder by extreme indifference under section 18–3–102(1)(d) and second degree murder under section 18–3–103(1)(a). Moreover, the added component of section 18–3–102(1)(d)—"under circumstances manifesting extreme indifference to the value of human life"—adds nothing to the proscribed conduct that renders it reasonably distinguishable from the statutory definition of murder in the second degree.

## A.

 Under the statutory definition of "knowingly", the culpable mental state for extreme indifference murder is that the offender be aware that his conduct creates a grave risk of death to another. This culpability, however, is certainly no greater than that required for second degree murder. We considered the *mens rea* of second degree murder in *People v. Mingo*, 196 Colo.

315, 317, 584 P.2d 632, 633 (1978), and held that under the 1977 amendment "[s]econd-degree murder ... is a general intent crime which entails being aware that one's actions are practically certain to result in another's death." *See also People v. Del Guidice*, Colo., 606 P.2d 840 (1979); *People v. District Court, Sixth Judicial District*, 198 Colo. 70, 595 P.2d 1045 (1979).

While, as a matter of conceptual possibility, one might be aware that his conduct creates a grave risk of death to another, as required for extreme indifference murder, and simultaneously lack that awareness required for second degree murder—that his actions are practically certain to result in another's death—it would be a most bizarre psychological state and certainly not a basis on which to structure momentous variations in sanctions. If, indeed, a person could harbor an awareness of the fatal risk his conduct poses to another, without also being aware of the practical certainty that death to another will result from that conduct, he would on that account be the less blameworthy, lacking as he would an awareness of the practical certainty of death. However, under the statutory scheme governing this case, he would be the more culpable as manifested by the difference in penalties for extreme indifference murder (life imprisonment) and second degree murder (ten to fifty years). Section 18–1–105(1), C.R.S. 1973 (1978 Repl. Vol. 8). The distinction, if any, between the culpable mental state for the two offenses is one without a sufficiently pragmatic difference to permit an intelligent and uniform application of the law. *See People v. Calvaresi, supra.* To base a substantial differential in penalty "upon the shifting sands of these semantics does not constitute substantial justice." *Id.* at 282, 534 P.2d at 319.

## B.

The People argue that the conduct or *actus reus* proscribed by extreme indifference murder is categorically distinct from second degree murder. We find no salvageable distinction in the present statutory scheme.

There is no requirement that the knowing conduct essential to extreme indifference murder and second degree murder be directed against the person actually killed. On the contrary, both offenses are general intent crimes, section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8), and as long as the offender knowingly acts in the proscribed manner and causes the death of another, he is guilty of the crime even though the person killed is not the person against whom the criminal conduct was directed. *See Henwood v. People,* 54 Colo. 188, 129 P. 1010 (1913); *Ryan v. People,* 50 Colo. 99, 114 P. 306 (1911); section 18–1–104(3), C.R.S.1973 (1978 Repl. Vol. 8) (use of case law authorized as an interpretative aid in construction of Colorado Criminal Code).

Extreme indifference murder involves conduct that creates a grave risk of death to another. "Grave" is commonly understood to mean serious or imminent, or likely to produce great harm or danger. *See Webster's New International Dictionary* at 1094 (2d ed. 1958). Second degree murder encompasses conduct that is practically certain to cause the death of another. *People v. Del Guidice, supra; People v. District Court, Sixth Judicial District, supra; People v. Mingo, supra.* "Practical certainty" has been used interchangeably with the term "more than merely a probable result." *People v. Del Guidice, supra.* In *People v. Mingo, supra,* it was described as "such a high probability of death that death was practically certain." 196 Colo. at 318, 584 P.2d at 634. In the context of criminal homicide, conduct that is practically certain to cause the death of another is the semantic equivalent of conduct creating a grave risk of death to another. Any difference here is so imperceptible as to vitiate its meaningful application in an adjudicative proceeding.

**C.**

Finally, it is argued that the presence of "circumstances manifesting extreme indif-ference to the value of human life" marks the dividing line between extreme indifference murder and second degree murder. We disagree.

The statutory terminology under scrutiny is descriptive of the facts or circumstances under which the death causing conduct occurred. It seems to reflect a judgment that there is a certain indifference that is qualitatively distinct from the conscious disregard required for reckless manslaughter. One commentator has observed that the adjective "extreme" is misplaced because there are no degrees of indifference to a particular result.[8]

We do not view the term "under circumstances manifesting extreme indifference to the value of human life" as without meaning. What it connotes is a heightened awareness and disregard of a fatal risk. *People ex rel. Russel v. District Court, supra,* noted that "an extreme indifference to human life is clearly a more culpable standard of conduct" than the reckless conduct involved in manslaughter but did not describe that standard. Reckless manslaughter requires a conscious disregard of a substantial and unjustifiable risk of death. Sections 18–3–104(1)(a) and 18–1–501(8), C.R.S. 1973 (1978 Repl. Vol. 8). Before a person can *consciously* disregard a risk, he must be aware of that risk. A level of culpability that is more than reckless, but less than intentional, traditionally has been characterized as willful conduct. *E. g., United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *see also Brown v. Spain,* 171 Colo. 205, 466 P.2d 462 (1970); *Ferguson v. Hurford,* 132 Colo. 507, 290 P.2d 229 (1955); *Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038 (1954). Willful conduct, however, is the equivalent of acting "knowingly" and the criminal code so recognizes by defining these culpable men-

---

8. "To speak of extreme indifference is pointless, because indifference is itself the ultimate extremity. You may want a thing with diminishing degrees of fervour, but once you have become indifferent to it you have reached the end of the road. You are dead to it." G. Williams, *The Mental Element in Crime* at 92 (1965).

tal states in identical terminology. Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8). In the context of criminal homicide, therefore, acting under circumstances manifesting extreme indifference to the value of human life must mean acting with the awareness that one's actions are practically certain to cause the death of another—in other words, acting knowingly, the very same culpability required for murder in the second degree under the existing statutory scheme. *People v. Del Guidice, supra; People v. District Court, Sixth Judicial District, supra; People v. Mingo, supra.*[9]

Moreover, any heightened awareness and disregard of fatal risk connoted by the "extreme indifference" terminology of section 18–3–102(1)(d) is already implicit in the other statutory component of the offense: "he *knowingly* engages in conduct which creates a grave risk of death to a person other than himself." To knowingly engage in conduct that creates a grave risk of death subsumes an awareness that death is practically certain to follow from that conduct. Thus, the "extreme indifference" element of section 18–3–102(1)(d) offers no rational basis for distinguishing that form of first degree murder from second degree murder. The statutory overlap of the elements of criminal responsibility for the two crimes licenses the jury to create its own standard of adjudication in each case, since no more proof is required for a conviction under one statute than under the other.

## V.

In summary, we hold that the statutory prohibition of extreme indifference murder in section 18–3–102(1)(d) violates equal protection of the laws, *Colo. Const.* Art. II, Sec. 25, because it cannot reasonably be distinguished from the lesser offense of second degree murder as defined in section 18–3–103(1)(a). We have carefully considered as an alternative to a declaration of unconstitutionality a construction of extreme indifference murder similar to that set forth in *People ex rel. Russel v. District Court, supra.* That case, however, was decided under a statutory scheme which provided a discernible difference between the culpability elements of extreme indifference murder and second degree murder. Even with a narrow construction of the scope of section 18–3–102(1)(d), it is clear that any distinction between that proscribed conduct and second degree murder, as presently defined in section 18–3–103(1)(a), would be illusory at best.

By our holding we do not imply that extreme indifference murder may not effectively be proscribed by statute. We emphasize, however, that an evenhanded application of the law turns on reasonably intelligible standards of criminal culpability. Hence any definition of extreme indifference murder must be sufficiently coherent and discrete that a person of average

9. The People rely on *People v. Poplis*, 30 N.Y.2d 89, 281 N.E.2d 167, 330 N.Y.S.2d 365 (1972), for the proposition that extreme indifference murder under section 18–3–102(1)(d) does not violate equal protection of the laws. We find the analogy to *Poplis* unpersuasive. There the court concluded that New York's statutory "depraved indifference murder," which required a culpability of a depraved indifference to human life and recklessness, was sufficiently distinguishable from reckless manslaughter. In upholding the defendant's conviction for depraved indifference murder arising out of continued acts of brutality toward a child, the court noted that conduct consisting of depraved indifference, plus recklessness, was conduct of graver culpability than mere recklessness alone. The *Poplis* decision reached a conclusion similar to our decisions in *People v. Jones*, 193 Colo. 250, 565 P.2d 1333

(1977), and *People ex rel. Russel v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974), where we concluded that extreme indifference murder was sufficiently distinguishable from reckless manslaughter. The infirmity in the instant case, however, is that the present statutory definition of extreme indifference murder in section 18–3–102(1)(d) is the psychological equivalent of acting "knowingly" as that term is defined in section 18–1–501(6) and required for second degree murder in section 18–3–103(1)(a).

The culpable mental state of acting recklessly, as defined in section 18–1–501(8), does not enter into our resolution of the equal protection issue in this case. Furthermore, neither the *Poplis* case nor our prior decisions in *People ex rel. Russel* and *Jones* considered this issue under a statutory context similar to that present here.

intelligence can reasonably distinguish it from conduct proscribed by other offenses.

The defendant's conviction of extreme indifference murder is reversed. No verdicts were returned on first degree murder after deliberation, nor on the lesser included offenses of second degree murder, reckless manslaughter, and criminally negligent homicide.

Accordingly, the cause is remanded for a new trial on first degree murder after deliberation and any lesser included offenses that appropriately might be submitted to the jury on retrial.

ROVIRA, Justice, dissenting.

I respectfully dissent.

If one interprets the evidence in favor of the jury's verdict in this case, the defendant, an experienced marksman, pointed a loaded pistol at his wife which he knew to be loaded, cocked the hammer, and then pulled the trigger believing the barrel was not pointed directly at her. They had been arguing about various family problems; and on past occasions, he had pointed the gun at himself and at his wife as a way of maintaining control within the family.

The majority has upheld the defendant's challenge to the facial constitutionality of the statute under which he was convicted, section 18–3–102(1)(d), C.R.S.1973 (1978 Repl. Vol. 8). Specifically, the majority holds that extreme indifference murder, section 18–3–102(1)(d), is indistinguishable from second-degree murder, section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8); and thus the defendant's conviction violates the Colorado Constitution art. II, sec. 25. See People v. Estrada, 198 Colo. 188, 601 P.2d 619 (1979) (equal protection is inherent in the state constitution's due process clause and is violated if widely divergent sentences are mandated for statutory offenses proscribing the same conduct).

My analysis differs in certain fundamental respects, and I reach an opposite conclusion.

I.

In order to understand the majority's opinion, it is helpful to clarify its context. The statutory language of section 18–3–102(1)(d) has not been found to be so vague that a man of common intelligence cannot understand its meaning. Furthermore, no invidious discrimination has been shown in its enforcement. See United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Rather, extreme indifference murder and second-degree murder have been interpreted by the majority as functionally identical. Once this construction has been reached, the well-established Colorado rule is then applied that different punishments may not be constitutionally imposed on defendants who have engaged in exactly the same criminal conduct. People v. Calvaresi, 188 Colo. 277, 534 P.2d 316 (1975).

The Calvaresi doctrine is grounded on the premise that equal justice is a constitutional guarantee of like treatment for all those who are similarly situated. The converse proposition—that different statutes may punish differently—has also received consistent support from this court. See, e. g., People v. Westrum, Colo., 624 P.2d 1302 (1981); People v. Estrada, supra; People v. Hulse, 192 Colo. 302, 557 P.2d 1205 (1976); People v. McKenzie, 169 Colo. 521, 458 P.2d 232 (1969). Our determination of similarity and difference, by necessity, requires that we consider the meaning of shifting and varying statutory criteria. However, the conduct of our review in such cases should, in my opinion, be restrained by basic principles of constitutional interpretation.

It is our duty to presume that a statute on its face is constitutional and that it was intended by the legislature to be constitutional. People v. Edmonds, 195 Colo. 358, 578 P.2d 655 (1978); People v. Garcia, 189 Colo. 347, 541 P.2d 687 (1975). This legislative intent is to be ascertained and given effect wherever possible. People v. Sneed, 183 Colo. 96, 514 P.2d 776 (1973). We should not seek out reasons to invalidate a statute. Harris v. Heckers, 185 Colo. 39, 521 P.2d 766 (1974). Rather, if the statute

is susceptible to different interpretations, one of which is constitutional, we should interpret it so as to preserve its validity. *People v. Gonzales,* 188 Colo. 272, 534 P.2d 626 (1975); *People v. McKenzie, supra.* In conducting our review, the defendant has the burden of proving unconstitutionality beyond a reasonable doubt. *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978); *People v. Sneed, supra; Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972).

In the present case, the majority's interpretation of the statute ignores one obvious difference between extreme indifference murder and second-degree murder—the existence of an additional element of the offense. It then construes the statute's culpability requirement in such a way as to stress points of similarity between the offenses instead of their essential point of difference.

## II.

The Colorado legislature has adopted a degree structure for murder offenses and has established a variety of other homicide offenses. *See* title 18, article 3, part 1, C.R.S.1973 (1978 Repl. Vol. 8). These crimes differ in the types of conduct which are forbidden, the states of mind which accompany this forbidden conduct, and in their potential penalties. A broad spectrum of possible charges may be brought against a person who has caused the death of another. The person's frame of mind in committing the forbidden act and the circumstances surrounding his conduct are crucial elements in determining the blameworthiness of his behavior and the justice of any consequent punishment.

"Everything which is regarded as enhancing the moral guilt of a particular offense is recognized as a reason for increasing the severity of the punishment awarded to it." *J. Stephen, A History of the Criminal Law of England,* vol. II, at 81 (London, 1883).

A comparison of the two statutes at issues here clearly demonstrates that extreme indifference murder contains an element in addition to those established for second-degree murder. The elements of the latter offense, section 18–3–103(1)(a), are as follows: (1) knowingly (2) causing a person's death.[1] Extreme indifference murder, section 18–3–102(1)(d), has the following elements: (1) knowingly engaging in conduct that creates a grave risk of death to another person (2) causing the death of another (3) under circumstances manifesting extreme indifference to the value of human life.

The majority holds that this third element of extreme indifference murder "connotes . . . a heightened awareness and disregard of a fatal risk." Whatever the merits of this proposed definition, the majority proceeds to transform its possible meaning by setting up a series of interpretive equations, first with willful conduct (a "level of culpability that is more than reckless, but less than intentional") and then with knowing conduct [defined as identical with willful conduct under section 18–1–501(6), C.R. S.1973 (1978 Repl. Vol. 8)]. Thus, by playing with verbal mirrors, all substantive content is drained from the statutory language until whatever independent significance it has left is discovered to be "already implicit in the other statutory component of the offense," knowingly engaging in conduct that creates a grave risk of death to another person. I think it is enough to say that this court is not obligated to adopt this analysis.

The circumstances under which an act is performed may have a vital effect upon the seriousness of its legal consequences. For instance, if a person intentionally causes the death of another under circumstances that show he acted "upon a sudden heat of passion," he is guilty of manslaughter rather than a murder offense under Colorado's legislative scheme. *See* section 18–3–104(1)(c), C.R.S.1973 (1978 Repl. Vol. 8). Justice

---

1. The phrase "but not after deliberation" in section 18–3–103(1)(a) is not an element of the offense; it describes what second-degree mur-

der is *not* rather than what it is. *See* the opinion of the majority, *supra,* n. 6.

Holmes has forcefully illustrated how the circumstances under which an act is committed could radically affect a defendant's guilt or innocence under the common law homicide offenses:

> "When a workman flings down a stone or piece of timber into the street, and kills a man; this may be either misadventure, manslaughter, or murder, according to the circumstances under which the original act was done: if it were in a country village, where few passengers are, and he calls out to all people to have a care, it is misadventure only; but if it were in London, or other populous town, where people are continually passing, it is manslaughter, though he gives loud warning; and murder, if he knows of their passing, and gives no warning at all." *The Common Law* at 50 (Howe ed., Little, Brown and Company, 1963).

In a similar manner, under our present legislative scheme, which provides a much broader and more sophisticated range of homicide offenses than did the common law, a defendant is subject to a greater penalty if he knowingly causes the death of another "[u]nder circumstances manifesting extreme indifference to the value of human life." Section 18–3–102(1)(d), C.R.S.1973 (1978 Repl. Vol. 8).

An extreme indifference to the value of human life may be defined as a "depraved kind of wantonness." *See People v. Poplis,* 30 N.Y.2d 85, 281 N.E.2d 167, 330 N.Y.S.2d 365 (1972). It is more blameworthy than the indifference to human life implicit in second-degree murder because the defendant's behavior shows that his disrespect, lack of care, and lack of concern for the value of human life are *extreme.* The quality of extreme indifference distinguishes this form of murder from second-degree murder because it is possible to commit second-degree murder without it. The nature, duration, and intensity of the murderer's culpable state of mind, as well as his manner of killing, his relationship to the victim, and the presence or absence of mitigating factors, may all affect a jury's determination of whether circumstances are present which justify the conclusion that the defendant acted with extreme indifference to the value of human life.

The presence of this element must be proven by sufficient, competent evidence. A jury's finding of guilt for extreme indifference murder requires that the jurors made an additional judgment of a distinct kind beyond what is necessary for a verdict of guilty to second-degree murder. They must be persuaded beyond a reasonable doubt that the degree of indifference to human life shown by the defendant in committing murder was "extreme."

A variety of circumstances may exhibit a legally sufficient degree of depravity or of outrageous disregard for human life to support a jury's find that a defendant has committed an offense such as that proscribed in the extreme indifference murder statute. For example, such circumstances exist when, during a game of Russian roulette, the defendant points a revolver loaded with a single cartridge at his friend and fires it on the third pull of the trigger [*Commonwealth v. Malone,* 354 Pa. 180, 47 A.2d 445 (1946)], or when a defendant fires several shots into a home which he knows to be occupied [*Hill v. Commonwealth,* 239 Ky. 646, 40 S.W.2d 261 (1931)], or when an adult defendant subjects a small child to repeated brutal beatings [*People v. Poplis, supra*], or when a defendant intends to shoot over his victim's head in order to scare him and hits him by "mistake" [*Myrick v. State,* 199 Ga. 244, 34 S.E.2d 36 (1945)]. Other and certainly more heinous forms of indifference to the value of human life can be imagined, but the majority's constitutional resolution of the present case makes *all* such circumstances equally irrelevant.[2]

---

2. It may be argued that the facts as set forth in this court's opinion in *People v. Jones,* 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed,* 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), do not clearly show circumstances that would support the jury's verdict. Our judicial problem, it seems to me, is clarifying what evidence is necessary for sufficiency. A constitutional "solution" to this problem is quick and easy but unjustified.

The defendant here has not questioned the sufficiency of the evidence in his case. So for purposes of this dissent, I do not discuss it.

### III.

The two statutes which are being compared differ in one other important aspect: the relation of their culpable mental states to their other statutory elements.

As the majority points out, the Colorado Criminal Code has consistently provided that extreme indifference murder and second-degree murder contain the same *mens rea* element. Prior to amendments made in 1977, both statutes required that their respective criminal acts be committed "intentionally." *See* section 18–1–501(5), C.R.S.1973 (1978 Repl. Vol. 8). Now both statutes require that the defendant act "knowingly" in order to be convicted.

The definition of acting "knowingly" is given in section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8), and it is divisible into two parts:

"A person acts 'knowingly' ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his *conduct* is of such nature or that such circumstance exists. A person acts 'knowingly' ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the *result.*" (Emphasis added.)

We have previously interpreted the *mens rea* element of second-degree murder in relation to the preceding definition:

"The elements of murder in the second degree concerning the defendant's state of mind are (1) that the death was more than merely a probable result of the defendant's actions and (2) that the defendant was aware of the circumstances which made death practically certain." *People v. District Court,* 198 Colo. 70, ——, 595 P.2d 1045, 1047 (1979), citing *People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978).

The first aspect of this requirement is measured by an objective standard: Did the defendant engage in conduct which made the victim's death more than merely a probable result of his actions? The second aspect of this *mens rea* is tested by a subjective standard: Was the defendant aware of the circumstances which made the victim's death practically certain?

I agree with the majority that the state of mind necessary to commit extreme indifference murder contains the elements of second-degree murder. The defendant must be shown to have caused a death which was more than merely the probable result of his actions, and he must be shown to have been aware that his conduct created a "grave risk of death" to another. An awareness of the "grave risk of death" and an awareness of the practical certainty of causing death are functional equivalents.

However, the presence of an additional element in the definition of extreme indifference murder requires the prosecution to prove that the defendant was aware that his conduct manifested an extreme indifference to the value of human life when he knowingly caused the victim's death. *See* section 18–1–503(4), C.R.S.1973 (1978 Repl. Vol. 8). In this respect, section 18–3–102(1)(d) focuses on the culpable quality of the defendant's mental state in a way to be rationally distinguished from the mental element involved in the commission of second-degree murder.

### IV.

It is obvious from my interpretation of these statutes that I find section 18–3–103(1)(a) to be a lesser included offense of section 18–3–102(1)(d). *See People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977); *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974). The greater offense must necessarily contain the elements of the lesser. To this extent, they were pre-ordained to be similar in very basic ways.

In order to be guilty of extreme indifference murder, a defendant by positive implication must have committed acts which would justify a conviction for second-degree murder. However, guilt for second-degree

murder is not sufficient to create guilt for extreme indifference murder. An additional element must be proven, and the defendant's awareness of this additional element must also be proven. This is all that is needed to distinguish the statutes as a constitutional matter. *See People v. McKenzie, supra.* The separate offenses are qualitatively and categorically distinct.

It is a well-known principle in Colorado that a single criminal transaction may give rise to the violation of more than one statute. *People v. Westrum, supra; People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972); *People v. McKenzie, supra. See People v. District Court, supra* (the trial court found probable cause to support a charge under section 18–3–102(1)(d) and was instructed to reinstate charges for second-degree murder). It is for the jury, not this court, to decide whether the facts of the individual case justify a finding that the defendant is guilty of the greater or of the lesser included offense.

I cannot agree with the majority's interpretation of section 18–3–102(1)(d), C.R.S. 1973 (1978 Repl. Vol. 8). I must dissent.