No. 20,772.

Rex Edwin Keller, Jr., *v.*
The People of the State of Colorado.
(387 P. [2d] 421)

Decided December 16, 1963.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. RICHARD W. BANGERT, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THE plaintiff in error will be referred to as the defendant and the defendant in error will be referred to as the People.

Defendant was found guilty of burglary by a jury in the trial court and brings error to review the judgment of conviction entered on the verdict. He urges the following grounds for reversal:

I. That the trial court lacked jurisdiction to hear the instant case due to the fact that more than two terms of court had expired between information being filed and trial.

II. That the trial court erred in refusing to grant defendant's motion for a directed verdict at the conclusion of the People's case.

III. The verdict of the jury was contrary to the law.

IV. That the trial court erred in defendant's motion for a new trial and further erred in its refusal to set aside the verdict by the jury.

The last three contentions are in reality one; namely, that there was not sufficient evidence presented by the People to carry the case to the jury. We shall first consider this aspect of the case.

The record discloses that at approximately 3:00 A.M. on the morning of August 24, 1960, one Howard Grothjan, a patrolman of the City of Boulder, observed a man on the corner of 11th and Spruce streets in that city. Grothjan's suspicions were aroused when he observed the man "duck and run" and he attempted to pursue him

in his patrol car. This effort was not successful and Grothjan radioed for another patrol car to aid in the search. Shortly thereafter, patrolman Ahlf arrived at the scene and the two officers began a search of the area on foot. Ahlf discovered the defendant Keller lying underneath an automobile parked behind a residence at 1034 Spruce Street. At this time Ahlf noticed a "crowbar" or pry-bar underneath the automobile. When asked what he was doing in the vicinity at such an early hour, Keller replied that he was "prowling."

The defendant was taken to the Boulder police station where he was questioned. There he informed the police that he had an automobile (not the one under which he had been discovered) and gave the keys to this automobile to the police. This vehicle was found parked in the 900 block of Spruce Street and a search of it revealed several suitcases of what appeared to the police to be new clothing, skin-diving equipment, and a plastic bag containing coins—mostly pennies.

An extensive search was thereafter conducted of the area surrounding the automobile under which the defendant had been found. Underneath this automobile the police found a pair of gloves, two screw drivers and a small flashlight. Under a bush located some three feet from the front of this automobile a plastic bag was found filled with paper currency amounting to some $1447.00. Approximately one hundred feet from the point where the defendant was apprehended a Samsonite "V.I.P." suitcase was found. This suitcase contained sundry items of male attire including belts, jewelry, handkerchiefs, tie clasps and cuff-link sets, neckties and underwear. This suitcase also contained a bag of coins of various denominations including some gold coins.

While at the police station, the defendant stated that he was in Boulder for five days to visit his grandmother who lived at 1018 Spruce Street and that he had not yet seen her. During the course of his interrogation, Keller was instructed to remove his shoes and stockings, where-

upon he produced a roll of bills from one stocking and stated, "I think this is what you're looking for." This amounted to some $74.00.

John F. Reinert testified that his establishment, the Reinert Clothing Company, located at 1147 Pearl Street, had been broken into during the night of August 23, or the morning of August 24. This store is close to the place where the defendant was discovered. Reinert testified that some $1649.00 had been taken from his store and he identified the Samsonite "V.I.P." suitcase and its contents—the gold coins and articles of male attire—as among the items missing from his store.

The People established that the method of entry into the clothing store was through a glass skylight which had been broken. Beneath the skylight is an air-conditioning or heating unit and a conduit running parallel to the ceiling. Below these structures and some three feet north of the skylight a clothes rack was positioned on the top of which was a board. In the dust on the board a heel print was found. The right shoe which the defendant was wearing at the time he was apprehended and the portion of the board containing the heel print were sent to the laboratory of the Federal Bureau of Investigation in Washington, D. C. At the trial, a special agent employed in the laboratory of the Federal Bureau of Investigation as an examiner of shoeprints and tire treads testified that in his opinion the heel print on the board was made by the heel of the defendant's right shoe and *no other*.

The defendant did not choose to testify. From the foregoing recital of the evidence, it is abundantly clear that there was sufficient circumstantial evidence presented by the People from which the jury might infer the defendant's guilt beyond a reasonable doubt. The fact that the People's case consisted of circumstantial evidence is of no moment, since it is clear that such evidence, no less than direct evidence, may support a verdict of guilty and that it is for the jury, in the last analysis, to weigh it under appropriate instructions. See *Mili-*

*tello v. People,* 95 Colo. 519, 37 P. (2d) 527; *Conferti v. People,* 79 Colo. 666, 247 Pac. 1065; 20 Am. Jur. *Evidence,* § 273, p. 260.

As we said in *Wilcox v. Pueblo,* 152 Colo. 173, 380 P. (2d) 912, 914:

"More frequently than not, burglary must be established by circumstantial evidence. *People v. Geisler,* 348 Ill. 510, 181 N.E. 328. As is suggested by the cited case, burglary is seldom provable by direct evidence of actual breaking and entry by the person charged. But in the admission of certain circumstantial evidence, the law has safeguarded the person accused of burglary."

█ The defendant contends that no evidence of the intent requisite to the crime of burglary was produced by the People. The answer to this contention is that an accused is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts, knowingly performed. 22 C.J.S. *Criminal Law,* § 35, p. 121. In the case of burglary, the fact that a felony was committed after breaking and entering is admissible as evidence from which the jury can infer that the intent to commit the felony existed at the time of the breaking and entering. See 2 Wharton's *Criminal Law and Procedure,* § 408, p. 28 and cases collected therein. Since the evidence here was sufficient to permit the jury to infer that the defendant broke and entered the clothing store and feloniously carried away goods and money therefrom, it was also sufficient to permit the jury to find that the defendant was possessed of the necessary *mens rea* at the time of the entry. *Davis v. People,* 137 Colo. 113, 321 P. (2d) 1103; *Wilcox v. People,* supra.

The defendant also urges that he was not identified "within the framework of the trial" by any of the People's witnesses. In this regard it is sufficient to say that the record manifestly does not support his contention; on the contrary, he was identified as the person involved in the events described above by the People's witnesses.

The other ground upon which the defendant relies is

that he was not tried within two terms of court as required by C.R.S. '53, 39-7-12 and that he was denied his constitutional right to a speedy trial pursuant to Article II, Sec. 16 of the Colorado Constitution and the Sixth Amendment to the United States Constitution. The defendant makes this argument for the first time in this Court, no such objections having been made in the trial court.

The information in this case was filed on August 25, 1960, and the defendant was committed on that date for the offense in question here. He was released on bail and remained on bail until he was sentenced by the trial court. At all times material here the trial court had two terms of court annually, March and September. Trial was originally set for the March 1961 term. As a result of several continuances, at whose instance the record does not show, a trial date was finally set on November 8, 1961. The defendant made no objection thereto and went to trial on that date *without objection on his part.* That trial resulted in a mistrial because of a hung jury and the case was immediately set for the next term of court. Defendant again made no objection and in fact requested a further continuance when the next trial became imminent. On August 28, 1962, *without objection from the defendant,* the trial began which resulted in the conviction which defendant seeks to reverse.

█ Although the first trial which resulted in a mistrial took place in the third term after defendant's commitment, the defendant waived any right to discharge he may have had under C.R.S. '53, 39-7-12 by going to trial without objection. Such an objection is a prerequisite to his claim for discharge under the statute and under the constitutional provision guaranteeing a speedy trial, *Heller v. People,* 2 Colo. App. 459, 31 Pac. 773; *People v. Hambleton,* 399 Ill. 388, 78 N.E. (2d) 293. *Randolph v. State,* 234 Ind. 57, 122 N.E. (2d) 860, cert. denied 350 U.S. 889, 76 S. Ct. 145, 100 L. Ed. 783. Defendant cites *Hicks v. People,* 148 Colo. 26, 364 P. (2d) 877 and *In Re*

*Miller,* 66 Colo. 261, 180 Pac. 749 as compelling a different conclusion. We do not agree.

In *Hicks v. People,* supra, the defendant not only specifically objected to the holding of the trial but had filed an earlier motion to dismiss because of failure to bring the case to trial within the two term rule. In *In Re Miller,* supra, the accused raised his objection by writ of habeas corpus before the trial was to be held, and the Court specifically pointed out that the right to discharge would have been waived had the accused proceeded to trial.

▇ Moreover, in the instant case the defendant himself requested a continuance after the March 1962 setting and by this act took affirmative action constituting a waiver of whatever constitutional or statutory right he may have had to a discharge at that point. The right to a speedy trial, both under the statute and the constitution, may certainly be waived, *Hicks v. People,* supra; *Heller v. People,* supra.

We hold that the failure to object in the trial court to the first trial being held and the subsequent request for a continuance by the defendant constituted a waiver of the statutory and constitutional provision upon which the defendant relies here. We approve the following language in *People v. Begue,* 1 App. Div. (2d) 289, 149 N.Y. Supp. (2d) 791, 795:

"* * * The objection that the defendant has not had a speedy trial must itself be speedily raised when the case is moved for trial. Otherwise, the defendant could play fast and loose with the prosecution: he could go to trial when the case is moved and, if the verdict is in his favor, let it stand, but if it is against him, argue that it was too late to try the case and that the indictment should have been dismissed."

The defendant accuses his counsel of incompetency for not objecting to the trial after two terms had run. Counsel for the defendant in the trial court were employed by him and were seasoned lawyers with many years of

experience in the field of criminal law. We decline to speculate why they chose not to object to the trial, if in fact the continuances which were granted were not at the request or with the express consent of the defendant, but, in the absence of anything in the record to the contrary, we must presume that such counsel acted in the best interests of the defendant.

The judgment is affirmed.