## No. 28103

### The People of the State of Colorado v. Betty J. Mingo

(584 P.2d 632)

Decided September 25, 1978.

Dale Tooley, District Attorney, O. Otto Moore, Assistant, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

No appearance for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The People appeal under the provisions of section 16-12-102, C.R.S. 1973, and request this court to consider whether the district court misconstrued the meaning of "knowingly" in the second-degree murder statute. The guarantee against double jeopardy precludes any retrial of the defendant, whom the jury acquitted on the charge of manslaughter.

The district court judge refused to instruct the jury as to second-degree murder on the grounds that the evidence was not sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant *knowingly* caused the victim's death. We conclude that the court's directed verdict of acquittal on the second-degree murder charge was error.

On October 23, 1977, the defendant walked with her son from the J&B Shine Parlor to the Kapre Lounge. At the door of the Lounge the victim assaulted them with a knife. A struggle ensued between the victim who was 5'8'' tall and weighed 146 pounds and the defendant's son who was 6'4" tall and weighed 250 pounds. At a distance of three feet, the defendant shot the victim in the chest with a gun she had been carrying in her brassiere. One witness claimed that the victim previously had purchased drugs from the defendant. The defendant testified that, although she had seen the victim only a few times prior to the day of the shooting, on that day she had found him in the rear of the shine parlor and told him to leave before she called the police. She admitted shooting the victim and stated that she "still hadn't forgot about him trying to get in the back of my place to try to steal something."

At the defendant's request the issue of self-defense was submitted to the jury.

The statute in question is section 18-3-103, C.R.S. 1973 (1977 Supp.). Under it, a person commits second-degree murder by causing "the death of a person knowingly, but not after deliberation . . . ." Section 18-1-501, C.R.S. 1973 (1977 Supp.) states that all offenses are general intent crimes in which "knowingly" is the element of mental culpability. The statute also states that knowledge with respect to the result of one's conduct means awareness that the "conduct is practically certain to cause the result." Second-degree murder, then, is a general intent crime which entails being aware that one's actions are practically certain to result in another's death.

The General Assembly revised the second-degree murder statute in 1977 by substituting "knowingly" for "intentionally." Previously, the required mental state was malice.[1] In replacing the malice standard (first with the requirement of intentional conduct, then with that of knowing conduct), the legislature in both instances adopted language suggested in the American Law Institute's Model Penal Code. Both the language of the revised statute and the Code suggested that the prosecutor must establish two factors to prove second-degree murder. The first is that death was more than merely a probable result of defendant's actions; and the second is that the defendant was aware of the circumstances which made death practically cerain.

Regarding the first factor, it is obvious that a jury could reasonably conclude that discharging a gun from a distance of three feet creates such a high probability of death that death was practically certain, not merely a probable result. The trial judge seemed to conclude that evidence of additional factors which would make death even more likely was necessary. He questioned counsel as to whether the statute required more than proof that the defendant shot the victim. For example, he wondered whether evidence that the defendant had aimed at the victim's chest was necessary. Under the circumstances, additional proof was not required to permit the judge to submit the second-degree murder charge to the jury. Since the gun was discharged in such proximity as the facts here indicate, a jury rationally could have found that the shooting was practically cetain to be fatal.

As the second factor, the prosecutor must establish that the defendant was aware of the practical certainty that death would result. The evidence regarding defendant's state of mind need not be direct. The law is clear that the judge or jury may presume an intent to cause the " ... natural and probable consequences of . . . unlawful voluntary acts, knowingly performed." *Keller v. People,* 153 Colo. 590, 387 P.2d 421 (1963).

Like intent, subjective awareness of the probability of consequences is a matter which often must be inferred from defendant's conduct and surrounding circumstances. Here there was no evidence or indication that the shooting was accidental or inadvertent. The jury might properly conclude that defendant was aware of the high probability of death as the result of her admittedly deliberate shooting of the victim at a distance of three feet.

In *United States v. Durham,* 512 F.2d 1281 (5th Cir. 1975), *cert. denied,* 423 U.S. 871, 96 S. Ct. 137, 46 L. Ed.2d 102 (1975), the court speaking of inferences regarding intent to kill, which are based on evidence of surrounding facts, said:

---

[1] C.R.S. 1963, 40-3-103.

"Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent."

Similarly, the weight to be given the inference under these circumstances was a question for the jury.

We disapprove the district court's ruling which precluded consideration by the jury of second-degree murder.