## No. 28445

**The People of the State of Colorado v. The District Court Within and For the Sixth Judicial District of the State of Colorado, and the Honorable William S. Eakes, One of the Judges thereof**

(595 P.2d 1045)

Decided June 11, 1979.

Craig S. Westberg, District Attorney, for petitioner.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Timothy A. Patalan, Deputy, for respondents.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

The People brought this original proceeding to review one district court's ruling that evidence presented at the preliminary hearing did not establish probable cause for a prosecution under the second-degree murder statute, section 18-3-103(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8). The court then bound Paul Loscutoff, the defendant, over for trial on the lesser included offense of criminally negligent homicide, section 18-3-105, C.R.S. 1973 (now in 1978 Repl. Vol. 8). At the People's request, we issued a rule to show cause why the original charge should not be reinstated. We now make the rule absolute.

On June 27, 1978, an information was filed against the defendant charging him with committing the crime of murder in the second degree, section 18-3-103(1)(b), C.R.S. 1973. The information read:
". . . on the 22nd day of June 1978 at and within the County of La Plata and State of Colorado, Defendant did unlawfully and feloniously with intent to cause serious bodily injury to a person other than himself, cause the death of Susan M. Miller."

As to that charge, an initial preliminary hearing was held on July 12, 1978, and the trial court found probable cause to believe that the defendants was guilty of that charge.

After that hearing, the defendant moved to dismiss the charge inasmuch as that subsection of the second-degree murder statute had been repealed. The defendant's motion was granted, and the People, on July 14, 1978, filed an amended information pursuant to section 18-3-103(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8), charging the defendant:

". . . on or about the 22nd day of June, 1978 at and within the County of La Plata and State of Colorado, did unlawfully, feloniously and knowingly cause the death of another person, namely Susan M. Miller, but not after deliberation."

A further preliminary hearing was held on August 3 and August 23, 1978, at which time the court ruled that it would, as to the amended charge of second-degree murder, consider the evidence which was elicited at the earlier preliminary hearing on July 12, 1978.

By order dated September 11, 1978, the trial court entered an order that the evidence elicited at the preliminary hearing did not support a finding of probable cause that the defendant was aware that his conduct was practically certain to cause the death of the victim, but did find that the facts of the case supported probable cause to believe that the defendant caused the death of another person by conduct amounting to criminal negligence. The trial court further stated:

"The facts of this case might support a charge of murder in the first degree under 1973 C.R.S. 18-3-102(1)(d) as amended in 1977, but not the charge here alleged."

The People contend: (1) that the district court misinterpreted the legislature's 1977 definition of "knowingly"; (2) that the district court erroneously concluded that the People had not shown probable cause for binding the defendant over on the charge of second-degree murder; and (3) that the district court should have bound the defendant over for trial on the lesser included offense of second-degree assault, section 18-3-203, C.R.S. 1973 (now in 1978 Repl. Vol. 8), rather than the offense of criminally negligent homicide.

## I.

The evidence developed at the preliminary hearing showed that the deceased, Susan M. Miller, was, on June 22, 1978, a healthy, pregnant, 28-year-old female who had been living with defendant and others at a residence in Durango, Colorado. The defendant and the deceased were not married but had been living together for some time.

On June 22, 1978, the defendant and the deceased had been drinking, and there was some evidence that both had taken LSD. On the day of her death, Susan Miller returned to her residence at approximately 1:00 a.m., and the defendant entered the premises shortly thereafter. Earlier in the evening, the defendant, in the presence of others, had an argument with the deceased and indicated that he was extremely angry with her and made several comments to the effect that he was going to "smash her face

in."

After the deceased had returned home, the defendant followed her into their bedroom and slammed the door shut behind them. While there were no eyewitnesses to the beating, there were a number of earwitnesses.

Testimony at the preliminary hearing established that the defendant shouted at the deceased, calling her a "bitch, whore and slut," and sounds of the beating of the deceased continued for some ten to fifteen minutes. During approximately one half of that time, the deceased could be heard crying and groaning; and when the sounds ceased, there could be heard the sound of the continued beating. The assault took place in an unlit bedroom, and witnesses heard the sounds of flesh hitting flesh. The furniture in the room was not moved, and no weapons were present.

Immediately after the beating, the defendant was observed with blood on his shirt and hands.

Mr. Gary Janko, an attending physician at the emergency room, testified that the deceased was still alive when he saw her and prepared her for emergency surgery. At that time, Dr. Janko testified that the deceased was in profound coma and had neurological signs of a person with a massive devastating head injury. Dr. Janko was of the opinion that the deceased had obtained some sort of massive and devastating blunt blow to the head, consistent with a blow of a fist or having one's head struck against a carpeted floor.

## II.

The second-degree murder statute states:

"(1) A person commits the crime of murder in the second degree if:

"(a) He causes the death of a person knowingly, but not after deliberation." Section 18-3-103, C.R.S. 1973.

Section 18-1-501(6), C.R.S. 1973 (1978 Repl. Vol. 8), defines "knowingly" as follows:

"(6) 'Knowingly' or 'willfully'. All offenses defined in this code in which the mental culpability requirement is expressed as 'knowingly' or 'willfully' are declared to be general intent crimes. A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' or 'willfully', with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

As in *People v. Treat*, 193 Colo. 570, 568 P.2d 473 (1977), the issue here is whether dismissal of the charge of murder in the second degree after a preliminary hearing was warranted.

The preliminary hearing is designed to determine whether probable cause exists to support charges that an accused person committed a particular crime. The evidence presented must be viewed in a light most favorable to the prosecution, and the evidence sufficient to support a

conviction is not necessary at this stage of the proceedings. *People v. Treat, supra.*

■ The elements of murder in the second degree concerning the defendant's state of mind are (1) that the death was more than merely a probable result of the defendant's actions and (2) that the defendant was aware of the circumstances which made death practically certain. *People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978). The first is an objective standard; the second, a subjective standard.

In *People v. Mingo, supra,* we disapproved the trial court's ruling which precluded consideration by the jury of second-degree murder and stated:

"Regarding the first factor, it is obvious that a jury could reasonably conclude that discharging a gun from a distance of three feet creates such a high probability of death that death was practically certain, not merely a probable result. The trial judge seemed to conclude that evidence of additional factors which would make death even more likely was necessary. He questioned counsel as to whether the statute required more than proof that the defendant shot the victim. For example, he wondered whether evidence that the defendant had aimed at the victim's chest was necessary. Under the circumstances, additional proof was not required to permit the judge to submit the second-degree murder charge to the jury. Since the gun was discharged in such proximity as the facts here indicate, a jury rationally could have found that the shooting was practically certain to be fatal.

"As the second factor, the prosecutor must establish that the defendant was aware of the practical certainty that death would result. The evidence regarding defendant's state of mind need not be direct. The law is clear that the judge or jury may presume an intent to cause the '. . . natural and probable consequences of . . . unlawful voluntary acts, knowingly performed.' *Keller v. People,* 153 Colo. 590, 387 P.2d 421 (1963).

"Like intent, subjective awareness of the probability of consequences is a matter which often must be inferred from defendant's conduct and surrounding circumstances. Here there was no evidence or indication that the shooting was accidental or inadvertent. The jury might properly conclude that defendant was aware of the high probability of death as the result of her admittedly deliberate shooting of the victim at a distance of three feet."

■ Under the standards set forth in *Mingo,* the evidence presented by the People at the preliminary hearing warrants a finding that probable cause exists as to the elements of murder in the second degree. As in that case, the defendant's conduct here must be the guide in determining that those elements where shown.

Concerning the first factor, we note that the defendant beat the victim during a period of from ten to fifteen minutes; he bloodied his shirt and hands in the course of the attack; and he inflicted a "devastating head

injury" in the words of Dr. Janko. There clearly is probable cause that such a vicious beating of the deceased created such a high probability of death that death was more than merely a probable result of the defendant's actions.

With regard to the second floor, the conduct of the accused — as established by the evidence — demonstrated that he was angry at the deceased; he threatened to "smash her face in" and used various epithets in voicing his anger before and during the beating.

■ A person is presumed to be cognizant of the necessary or natural and probable consequences of his unlawful voluntary acts, knowingly performed. *See Keller v. People,* 153 Colo. 590, 387 P.2d 421 (1963). The beating here certainly was not accidental or inadvertent. One who repeatedly strikes another for ten to fifteen minutes and inflicts a massive head injury on his victim can be held to be aware of the possible fatal consequences of his actions.

■ Because probable cause exists as to these two elements concerning the defendant's mental state, the district court erred in dismissing the prosecution for second-degree murder.

Accordingly, the rule to show cause is made absolute.

MR. JUSTICE GROVES does not participate.