The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Mariano Joseph PADILLA,
Defendant-Appellant.

No. 80SA383.

Supreme Court of Colorado,
En Banc.

Nov. 2, 1981.

Rehearing Denied Dec. 21, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

Mariano Padilla (defendant) was charged with and found guilty of second-degree murder.[1] He challenges his conviction, claiming that the statute is unconstitutional because the culpable mental state required for a conviction of second-degree murder is not sufficiently distinguishable from that required under the manslaughter statute.[2]

1. Section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), provides that: "A person commits the crime of murder in the second degree if: (a) He causes the death of a person knowingly, but not after deliberation."

2. Section 18–3–104(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), provides that: "A person commits the crime of manslaughter if: (a) He recklessly causes the death of another person...."

3. This case was transferred to this court from the Colorado Court of Appeals because of the constitutional issue raised by the defendant. Section 13–4–102(1)(b), C.R.S.1973, confers initial jurisdiction over appeals in which the constitutionality of a statute is in question to the supreme court. The court of appeals referred

He also contends that the trial judge erred when, after defining the offense of second-degree murder, he instructed the jury on lesser included offenses in the words of Colorado Criminal Jury Instruction 36:6 even though no objection was made at the time the instruction was given or in his motion for new trial. We affirm.[3]

This case arose out of an over-the-fence confrontation between two neighbors. On October 8, 1978, the defendant and his neighbor, Robert Villalobos, had an argument concerning a rock-throwing incident involving the Villalobos children. The end result of this confrontation was that Robert Villalobos was shot in the chest and mortally wounded by the defendant.

I.

■ The defendant argues that the second-degree murder statute violates the equal protection guarantees of the *U.S. Const.* amend. XIV and *Colo.Const.* art. II, sec. 25, because the requisite mental state is not sufficiently distinguishable from that required for a conviction of manslaughter. We disagree.

This issue was resolved in *People v. Del Guidice*, Colo., 606 P.2d 840 (1980), where we held that the second-degree murder statute was constitutionally distinguishable from the manslaughter statute. The basis for that decision was the distinction between the *mens rea* elements "knowingly"[4] and "recklessly."[5]

the case to this court pursuant to section 13–4–110(1)(a), C.R.S.1973.

4. "Knowingly" is defined in section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8):
"A person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

5. "Recklessly" is defined in section 18–1–501(8), C.R.S.1973 (1978 Repl. Vol. 8):
"A person acts recklessly when he consciously disregards a substantial and unjustifiable

In *Del Guidice* we held that the difference between these mental states mirrored "the distinction between practically certain of result on the one hand, and probability or contingency of result on the other." *People v. Del Guidice, supra,* 606 P.2d at 842. This difference is sufficient to avoid an equal protection violation. *Id., citing People v. Calvaresi,* 188 Colo. 277, 282, 534 P.2d 316, 318 (1975).

In the present case, the jury heard testimony that the defendant and the deceased were arguing and, during the course of the argument, the defendant shot the deceased in the chest. The jury could determine whether the defendant acted with an awareness that his conduct was practically certain to cause death or whether he merely disregarded a substantial and unjustifiable risk of death. Here, the proximity of the two men and the fact that the gun was fired at the deceased's chest permit the jury to infer that the defendant had the requisite mental state. *People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978). These facts present a situation where the distinction between the two mental states is clear and " 'sufficiently apparent to be intelligently and uniformly applied' when examined from the perspective of likely impact on a jury. . . ." *People v. Del Guidice, supra,* 606 P.2d at 842, *citing People v. Calvaresi, supra,* at 282, 534 P.2d at 318; *People v. Favors,* 192 Colo. 136, 556 P.2d 72 (1976).

## II.

■ Defendant next contends that the introductory paragraph of the instruction on the lesser included offenses of manslaughter and criminally negligent homicide was coercive and unduly restrictive because it imposes "a particular method on the jury for the consideration of the various possible verdicts." [6] The instruction states in pertinent part:

> risk that a result will occur or that a circumstance exists."

**6.** The defendant raises this argument for the first time on appeal. Pursuant to Crim.P. 30, any objection to jury instructions must be raised before the jury is charged and only grounds so specified shall be considered on

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt."

The defendant interprets this instruction as requiring the jury to unanimously agree to acquit on the greater offense before considering the next lesser included offense. He argues that the jury should be permitted to deliberate without this restriction, in the hope that this would prevent jurors opposed to the defendant's conviction on the greater offense from being coerced into voting for conviction of that offense because the restriction may preclude their consideration of any lesser offenses.

The instruction under consideration is a verbatim recitation of the Colorado pattern jury instruction on lesser included offenses. *Colo.J.I.* (Crim.) 36:6. While it is not clear from the language of the instruction that the jurors would feel compelled to reach a unanimous decision on the greater offense before considering the lesser included offenses, we note that the comparable federal jury instruction specifically requires a unanimous acquittal, and it has withstood challenges in the appellate courts. *See United States v. Tsanas,* 572 F.2d 340, 346 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

The instruction upheld in *United States v. Tsanas,* 572 F.2d at 344, provided in pertinent part:

"If the jury should unanimously find the accused not guilty of the crime charged in the indictment, then the jury must proceed to determine the guilt or inno-

motion for new trial or review. If a party fails to object to an instruction, an appellate court will not consider the issue unless the appellant can show prejudice amounting to plain error within the meaning of Crim.P. 52(b). *See People v. Tilley,* 184 Colo. 424, 520 P.2d 1046 (1974).

cence of the accused as to the lesser offense which is necessarily included in the crime charged."[7]

The *Tsanas* court determined that the instruction was not wrong as a matter of law and therefore did not find plain error.[8] *Id.* at 346. This conclusion was based upon a detailed consideration of the advantages and disadvantages of the instruction to both the prosecution and the defense. In response to the coercion argument, which is before this court, the *Tsanas* court noted that the requirement of unanimity has advantages for the defendant because it may "prevent any conviction at all" if the jury is unable to unanimously agree on the greater charge. *Id.*

The defendant relies on several Michigan cases in which a similar jury instruction was invalidated because of the possibility of coercion. *See e.g., People v. Mays,* 407 Mich. 619, 288 N.W.2d 207 (1980); *People v. Hurst,* 396 Mich. 1, 238 N.W.2d 6 (1976). These cases hold that an instruction will not be considered error unless it implies that there must be an acquittal on the greater offense before consideration of the lesser. *People v. Mays,* 288 N.W.2d at 208. The rule in Michigan is that the court may "suggest an order of consideration of offenses" but may not foreclose the jury's consideration of lesser offenses if they have not reached an agreement on the greater. *Id.*

We are not convinced that the instruction under consideration can be read to require a unanimous decision on the greater offense before consideration of the lesser.[9]

We are persuaded by the reasoning in *United States v. Tsanas, supra,* that the giving of this instruction is not wrong as a matter of law and did not deprive the defendant of a right to trial by jury. There are advantages and disadvantages to the defendant under this charge, but in a situation where no objection or alternative charge has been presented to the trial court, we do not find plain error.

We affirm.

---

7. This instruction follows the model found in 1 E. Devitt & C. Blackmar, *Federal Jury Practice & Instructions* § 18.05 (3d ed. 1977).

8. The court noted, however, that if the defendant requested an instruction directing the jury to consider any lesser included offenses after a reasonable but unsuccessful effort to reach a verdict on the greater offense, it should be given. 572 F.2d at 346.

9. Nonetheless, we note that there is ample authority supporting an explicit requirement of unanimity on the greater charge. *See Pharr v. Israel,* 629 F.2d 1278 (7th Cir. 1980); *Catches v. United States,* 582 F.2d 453 (8th Cir. 1978); *Fuller v. United States,* 407 F.2d 1199 (D.C.Cir. 1967), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).