QUINN, Chief Justice,
dissenting:
Although I agree that “it is not the role of this court to act as overseer of all legislative action and declare statutes unconstitutional merely because we believe they could be better drafted or more fairly applied,” maj op. at 1230 (quoting People ex rel. Russel v. District Court, 185 Colo. 78, 81, 521 P.2d 1254, 1255 (1974)), it nonetheless remains the responsibility of this court to strike down statutes that fail to conform to overriding constitutional norms applicable to all governmental action. We have held on numerous occasions that separate statutes proscribing with different penalties what ostensibly might be different acts, but offering no intelligent standard for distinguishing the proscribed conduct, run afoul of equal protection under state constitutional doctrine. E.g., People v. Marcy, 628 P.2d 69 (Colo.1981); People v. Bramlett, 194 Colo. 205, 573 P.2d 94 (1977), cert. denied, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978); People v. Calvaresi, 188 Colo. 277, 534 P.2d 316 (1975). Because I am satisfied that the 1981 amendment to the extreme indifference murder statute does not remove the equal protection impediments recognized by this court in Marcy, 628 P.2d 69, I respectfully dissent.
I.
In Marcy, decided in 1981, we held that the statutory proscription of extreme indifference murder in section 18-3-102(l)(d), 8 C.R.S. (1978), violated equal protection of the laws under the Colorado Constitution because it could not reasonably be distinguished from the lesser offense of second degree murder. The pre-1981 version of section 18-3-102(l)(d), which was at issue in Marcy, stated that a person commits the crime of murder in the first degree if:
Under circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another.
Section 18-3-103(l)(a), 8 C.R.S. (1978), stated that a person commits the crime of murder in the second degree if “[h]e causes the death of a person knowingly, but not after deliberation.” Since the evil consequence proscribed by both statutory offenses was the death of a person, we stated in Marcy that if a valid basis exists for distinguishing these offenses, it must be found in either the culpability element of each offense or in the added component required for extreme indifference murder of acting “under circumstances manifesting extreme indifference to the value of human life.” Marcy, 628 P.2d at 75.
After initially scrutinizing the culpability elements of each offense — knowingly engaging in conduct which creates a grave risk of death in the case of extreme indifference murder and knowingly causing the death of a person in the case of murder in the second degree — we concluded in Marcy that no rational basis of distinction existed between these two offenses. We explicated the rationale for our conclusion as follows:
Under the statutory definition of “knowingly”, the culpable mental state for extreme indifference murder is that the offender be aware that his conduct *1235 creates a grave risk of death to another. This culpability, however, is certainly no greater than that required for second degree murder. We considered the mens rea of second degree murder in People v. Mingo, 196 Colo. 315, 317, 584 P.2d 632, 633 (1978), and held that under the 1977 amendment “[s]econd-degree murder ... is a general intent crime which entails being aware that one’s actions are practically certain to result in another’s death.” See also People v. Del Guidice, Colo., [199 Colo. 41,] 606 P.2d 840 (1979); People v. District Court, Sixth Judicial District, 198 Colo. 70, 595 P.2d 1045 (1979).
While, as a matter of conceptual possibility, one might be aware that his conduct creates a grave risk of death to another, as required for extreme indifference murder, and simultaneously lack that awareness required for second degree murder — that his actions are practically certain to result in another’s death —it would be a most bizarre psychological state and certainly not a basis on which to structure the momentous variations and sanctions.... The distinction, if any, between the culpable mental state for the two offenses is one without a sufficiently pragmatic difference to permit an intelligent and uniform application of the law.
628 P.2d at 78.
We then turned to the requirement that the conduct occur “under circumstances manifesting extreme indifference to the value of human life” and determined that this language was the equivalent of acting “knowingly,” the very same culpability required for murder in the second degree. Marcy, 628 P.2d at 79-80. Drawing on our 1974 decision in People ex rel. Russel v. District Court, 185 Colo. 78, 521 P.2d 1254, we reaffirmed the proposition that the term “extreme indifference to the value of human life” is clearly a more culpable standard of conduct than recklessness, which requires a conscious disregard of a substantial and unjustifiable risk of death. See § 18-1-501(8), 8B C.R.S. (1986). After pointing out the equally obvious truth that “[b]efore a person can consciously disregard a risk, he must be aware of that risk,” Marcy, 628 P.2d at 79 (emphasis in original), we then concluded:
A level of culpability that is more than reckless, but less than intentional, traditionally has been characterized as willful conduct.... Willful conduct, however, is the equivalent of acting “knowingly” and the criminal code so recognizes by defining these culpable mental states in identical terminology. Section 18 — 1— 501(6), C.R.S.1973 (1978 Repl.Vol. 8). In the context of criminal homicide, therefore, acting under circumstances manifesting extreme indifference to the value of human life must mean acting with the awareness that one’s actions are practically certain to cause the death of another — in other words, acting knowingly, the very same culpability required for murder in the second degree under the existing statutory scheme.
Id. at 79-80 (citations omitted).
II.
Subsequent to our decision in Marcy, the General Assembly amended the statutory definition of extreme indifference murder in the following manner:
(1) A person commits the crime of murder in the first degree if:
* ⅜8 * * * #
(d) Under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another.
Ch. 212, sec. 4, § 18-3-102, 1981 Colo.Sess. Laws 972, 973 (currently codified at § 18-3-102(l)(d), 8B C.R.S. (1986)) (emphasis reflects 1981 amendment). Even with this new terminology, however, the crime of extreme indifference murder, which is a class 1 felony punishable by life imprisonment or death, is not sufficiently distinguishable from murder in the second degree, a class 2 felony punishable by a presumptive sentence of 8-24 years, to over *1236 come the equal protection problem identified in Marcy.
The majority turns its decision on the concept of “universal malice,” which was the forerunner of the modern concept of extreme indifference to human life. “Universal malice,” as the majority notes, is evinced by conduct greatly dangerous to the lives of other persons and manifesting a depraved mind not directed against the life of a particular person but against human life in general, withour care or concern as to who the ultimate victim may be. Maj op. at 1231-1232. The fact remains, however, that the pre-1981 statutory terminology of “extreme indifference to the value of human life” encompasses the very same type of conduct embodied in the concept of “universal malice.” See Marcy, 628 P.2d at 76; Longinotti v. People, 46 Colo. 173, 178-81, 102 P. 165, 167-68 (1909); O. Warren & B. Bilas, 1 Warren on Homicide § 78, at 366 (perm. ed. 1914). The majority's purported distinction between “universal malice” in the present statutory definition of extreme indifference murder and the pre-1981 concept of “extreme indifference to the value of human life” is a distinction without any intelligible difference. The statutory terminology “evidencing an attitude of universal malice” is simply a restatement of “extreme indifference to the value of . human life,” and, as such, adds up to nothing more than a statutory redundancy. “To base a substantial differential in penalty ‘upon the shifting sands of these semantics does not constitute substantial justice.*” Marcy, 628 P.2d at 78 (quoting People v. Calvaresi, 188 Colo, at 282, 534 P.2d at 319).
I also find no significance in the additional words “generally” and “or persons” in the 1981 amendment. It has always been implicit in the pre-1981 version of extreme indifference murder that the “extreme indifference” be directed generally to the value of human life, rather than to the life of a particular person. See People ex rel. Russel, 185 Colo, at 83, 521 P.2d at 1256. The proscription of conduct creating a grave risk of death to “persons” as well as to “a person” also fails to contribute any objective basis to the purported distinction between extreme indifference murder and murder in the second degree. Indeed, this court’s 1977 decision in People v. Jones, 193 Colo. 250, 565 P.2d 1333, made quite clear that extreme indifference murder encompassed conduct which creates a grave risk to either a single person or many persons. Id. at 254, 565 P.2d at 1336.
In sum, as long as second degree murder requires that the offender “knowingly” cause the death of another — that is, that he act with an awareness that his conduct is practically certain to result in death, Mingo, 196 Colo, at 317, 584 P.2d at 633 — and as long as extreme indifference murder, as presently defined, also requires that the offender knowingly engage in conduct which creates a grave risk of death to another “under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally,” then, in my view, any purported distinction between these two offenses will necessarily fail to pass constitutional muster under an equal protection analysis.
III.
I do not mean to imply that the type of conduct encompassed in the concept of “extreme indifference murder” may not be effectively proscribed by statute. As we observed in Marcy, equal protection of the laws requires no more than that any legislative proscription of that form of conduct be drafted in such manner as to permit a person of ordinary intelligence to reasonably distinguish so-called “extreme indifference murder” conduct from other forms of criminal homicide. While I am certain that the General Assembly obviously intended the 1981 version of extreme indifference murder to be distinguishable from murder in the second degree, I am also equally certain that it failed to achieve that distinction in a way that permits a rationally objective and even handed application of this statutory proscription in an adjudicative proceeding.
Recognizing that the prerogative of the General Assembly to draft substantive legislation is limited only by overriding constitutional principles, I nonetheless believe it *1237 important to point out that the General Assembly was not without viable alternatives which, in my view, would sufficiently distinguish the type of life-endangering conduct proscribed by section 18-3-102(l)(d) from murder in the second degree. For example, the legislature could have amended section 18-3-102(l)(d) to state that a person commits the crime of murder in the first degree if he intentionally engages in conduct which by its very nature creates a grave risk of death to another person or persons, and engages in such conduct under circumstances manifesting a reckless disregard of the risk that the conduct will result in the death of one or more persons, and thereby causes the death of another person. The culpability element of “intentionally” in this statutory context would not require a conscious objective to cause death, but rather a conscious objective to engage in conduct which by its very nature creates a grave risk of death, and thus would be conceptually distinguishable from second degree murder, which requires an awareness that one’s actions are practically certain to result in another’s death. See Mingo, 196 Colo, at 317, 584 P.2d at 633. While admittedly this distinction between acting intentionally with respect to conduct and acting knowingly with respect to result is somewhat subtle, it is a distinction that is fundamental to the Colorado Criminal Code. See § 18-1-501, 8B C.R.S. (1986). Moreover, a further basis for distinguishing this form of homicide from murder in the second degree is the added element that the life-endangering conduct must be performed under circumstances manifesting a reckless disregard of the risk that the offender’s conduct will result in the death of one or more persons.
Because the 1981 amendment to section 18-3-102(l)(d) fails to provide any intelligent standard for permitting a rational distinction between extreme indifference murder and murder in the second degree, I would affirm the judgment of the district court in both of these cases and hold that the present definition of extreme indifference murder violates equal protection of the laws under the Colorado Constitution. Colo. Const, art. II, § 25.
I am authorized to say that ERICKSON, J., joins me in this dissent.