The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Bettie FISHER, Defendant–Appellee.

No. 86SA495.

Supreme Court of Colorado, En Banc.

July 5, 1988.

Norman S. Early, Jr., Dist. Atty., David Dansky, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellee.

VOLLACK, Justice.

The prosecution filed this appeal from the district court's denial of its "Motion to File Information Directly in the District Court" pursuant to Crim.P. 7(c)(2). We reverse and remand with directions to the district court to grant the prosecution's motion to reinstate the original charges in the district court.

I.

This case arises from an incident that took place on September 21, 1986. Evidence at the preliminary hearing established that on the day in question, police officers were called to a Denver address on a report of a shooting. Officers arrived at the single family residence to find the body of Robert Vizina in the front room of the house. A bullet had entered Vizina's body through the right armpit, traveled through the body, and lodged in the left hip. At the scene, the police recovered a .38 special revolver with four live rounds inside and two spent shells; the hammer of the gun was in a cocked position. The investigating detective found a second bullet lodged in a ceiling joist in the same room where the body was found. A pathologist at Denver General Hospital conducted an autopsy of Vizina's body and determined that the cause of his death was a gunshot wound to the upper body which severed several major organs.

Detective Penington, who testified at the preliminary hearing, requested that a nitrate pattern test be performed to determine the distance from the muzzle of the weapon to the victim at the time the weapon was fired. The result of the test showed that the muzzle of the revolver "was further than three feet from the victim when it was fired" because there was no nitric pattern on either the victim or his clothing. Detective Penington also requested that a gunshot residue test be performed. This test detects the presence of barium, lead, and antimony content expended from a weapon at the time of discharge. This test was performed on both Fisher and on Vizina's body. As to Vizina's body, the results were negative. Although the results were inconclusive as to Fisher, the detective testified that gunshot residue was found on the back of her left hand.

Another officer at the scene interviewed the defendant's neighbor. The neighbor told the officer that he had seen Fisher go to the recreational vehicle parked outside her house about ten minutes before he heard sirens and saw emergency equipment arriving at Fisher's house.

Detective Penington testified that he took two statements from Fisher. Fisher was advised of her rights at 7:16 p.m. and gave her first statement to Penington at that time. This statement was not taped. Penington testified that Fisher said she had spent the morning canning and "had had a couple of ... 3.2 beers." Fisher told him that when Vizina returned to the house in an intoxicated condition, he lay down on the bed in the bedroom and she covered him with a quilt. When he got up at noon he brought out a bottle of bourbon and she "had a couple of drinks with him." While Vizina sat on the couch, the two "began

discussing his failure to help payments with the house or with money around the house." Vizina asked Fisher to go into the recreational vehicle parked outside the house to get a gun for him. Fisher returned to the house with a gun and gave it to Vizina. According to her statements, Vizina handed the gun back to her and said "Shoot me, I'm no good. Shoot me and I won't hurt you anymore" and "Do it." Penington testified that Fisher said "the next thing she knew was the gun—she heard a loud boom. I asked her where the gun was after she heard this loud noise, and she said she didn't know, that she saw [Vizina] laying on the floor." Fisher realized that Vizina was bleeding and called for emergency services.

Two paramedics who arrived at the scene before the detective described Fisher as "quite hysterical" and "agitated." Detective Penington arrived a half hour to an hour after the arrival of the paramedics and the fire department. Fisher's second statement was taken later in the evening and was videotaped. The videotape was entered into evidence at the preliminary hearing, and viewed by the judge during the hearing. When asked to describe Fisher's condition, Detective Penington responded: "Her condition was shook up; she seemed somewhat intoxicated; she was scared; she was uncertain of what had happened and what was happening; in the condition of Mr. Vizina, she was uncertain what the situation w[a]s there."

The results of fingerprint analysis performed on the revolver were negative; no fingerprints were recovered from the weapon. However, it was established that both bullets had been fired from the weapon found in the front room. Based on the location of the bullet in the ceiling, it appeared that the shot had been fired from the vicinity of the front door.

On cross-examination, the detective explained that gunshot residue was found on the back of Fisher's left hand, and that "[a] person would have to hold that gun in their hand at the time of firing it to have any residue on the back of their hand." However, the results of the test were considered to be inconclusive.

■ Fisher was charged by information with second degree murder, in violation of section 18–3–103(1)(a),[1] and crime of violence, in violation of section 16–11–309.[2] A preliminary hearing was held in Denver County Court in October 1986. At the conclusion of the preliminary hearing, the county court ruled that probable cause was not established on the charge of second degree murder and dismissed Count I. Count II, the crime of violence charge, was also dismissed. In a *sua sponte* ruling, the county court held that probable cause had been established to support a charge of reckless manslaughter.[3] The case was bound over to the Denver District Court on that charge.[4]

---

1. "A person commits the crime of murder in the second degree if: (a) He causes the death of a person knowingly, but not after deliberation." § 18–3–103(1)(a), 8B C.R.S. (1986).

2. The statute provides:
 **16–11–309. Mandatory sentences for violent crimes.** (1)(a) Except as provided in paragraph (b) of this subsection (1), any person convicted of a crime of violence shall be sentenced pursuant to section 18–1–105(9), C.R.S., to a term of incarceration greater than the maximum in the presumptive range, but not more than twice the maximum term, provided for such offense in section 18–1–105(1)(a), C.R.S., without suspension; ...
 ....
 (2)(a)(I) "Crime of violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of

any crime committed against an elderly or handicapped person or a crime of murder, ... 8A C.R.S. (1986).

3. The distinguishing factor between second degree murder and reckless manslaughter is in the requisite *mens rea*. The *mens rea* required for second degree murder is "knowingly"; for reckless manslaughter the *mens rea* is "recklessly." *People v. Padilla*, 638 P.2d 15, 16 (Colo.1981); §§ 18–1–501(6) and (8), 8B C.R.S. (1986). The court which holds the preliminary hearing has authority to bind over the defendant on a lesser included offense. *People v. Hrapski*, 658 P.2d 1367, 1369 (Colo.1983), *on appeal after remand*, 718 P.2d 1050 (Colo.1986).

4. The county court's ruling was not included as part of the record on appeal, so it cannot be determined on what specific basis the county court ruled that probable cause was not shown as to the charge of second degree murder.

The prosecution filed a Motion to File Information Directly in the District Court, pursuant to Crim.P. 7(c)(2), 7B C.R.S. (1984).[5] The prosecution argued that the county court "erred as a matter of law in concluding that probable cause was not established as to Count I." After conducting a hearing, the district court agreed with the county court "that there is not probable cause to believe that the defendant's actions—that she was aware that her actions were practically certain to cause the result that it [sic] did, and, therefore, the motion to file the charge directly in district court is denied." The defendant was arraigned on the reckless manslaughter charge and she entered a plea of not guilty.

The prosecution filed a notice of appeal in this court, asking us to reverse the orders entered below and remand the case for reinstatement of the original charges.

## II.

The issue before us is whether the district court abused its discretion in denying the prosecution's motion to file a direct information. *Holmes v. District Court,* 668 P.2d 11, 14 (Colo.1983); *People v. Freiman,* 657 P.2d 452, 453 (Colo.1983). This ruling was based on the court's conclusion that the county court correctly ruled that there was insufficient evidence to find probable cause on the charge of second degree murder.

The purpose of a preliminary hearing is "to determine if there is probable cause to believe that an offense has been committed and that the person charged committed it." § 16–1–104(14), 8A C.R.S. (1986). Probable cause must be established as to each element of the crime charged. *People v. Moyer,* 670 P.2d 785, 791 (Colo.1983). If the county court dismisses a charge after the preliminary hearing for lack of probable cause, the only remedy available to the prosecutor is to request leave to file a direct information in the district court. If the district court de-

nies that request, its decision may be appealed. *People v. Freiman,* 657 P.2d 452, 454 (Colo.1983). "This court generally discourages appeals involving sufficiency of the evidence determinations. However, where ... the evidence is sufficient as a matter of law to establish probable cause, and a reversal of the trial court's dismissal is required, we will entertain the appeal." *People v. Holder,* 658 P.2d 870, 871 (Colo. 1983); *People v. Hrapski,* 658 P.2d 1367, 1368 (Colo.1983), *on appeal after remand,* 718 P.2d 1050 (Colo.1986).

At a preliminary hearing the prosecution must provide sufficient evidence "to induce a person of ordinary prudence and caution to a reasonable belief that the defendant committed the crimes charged." *People v. Williams,* 628 P.2d 1011, 1014 (Colo.1981). The prosecution is not required to present evidence "sufficient to support a conviction." *Id.* The judge presiding at a preliminary hearing is required to apply the law to the prosecution's case. *People v. Cisneros,* 193 Colo. 380, 383, 566 P.2d 703, 705 (1977). "[I]t is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences which can be drawn from the People's evidence." *Holder,* 658 P.2d at 872. Hearsay and other incompetent evidence may properly comprise the bulk of the evidence at a preliminary hearing. *Blevins v. Tihonovich,* 728 P.2d 732, 734 (Colo.1986).

The test is whether the prosecution's evidence, taken alone and in a light most favorable to the prosecution, is sufficient to induce a reasonable belief that the defendant committed the crime with which she has been charged. *Holder,* 658 P.2d at 871. The following standards for determining probable cause at a preliminary hearing apply:

(1) Probable cause is established when the evidence is sufficient to induce a person of ordinary prudence and caution to a reasonable belief that the defendant

---

**5.** Rule 7(c) states: "The prosecuting attorney, with the consent of the court having trial jurisdiction, may file a direct information if: (2) A

preliminary hearing was held in the county court and the accused person was discharged." 7B C.R.S. (1984).

committed the crimes charged; (2) The evidence presented must be viewed in the light most favorable to the prosecution; (3) If testimony conflicts, the trial court must draw an inference for the prosecution; and (4) The preliminary hearing is a screening device and not a trial. Therefore, evidence sufficient to support a conviction is not required.

*Williams,* 628 P.2d at 1014; *see People v. Brisbin,* 727 P.2d 374, 375 (Colo.1986).

 Second degree murder is a general intent crime, and the prosecution must establish two factors to prove the crime. The first factor is that death was "more than merely a probable result of defendant's actions." *People v. Mingo,* 196 Colo. 315, 318, 584 P.2d 632, 633 (1978). The second factor is that the defendant "was aware of the circumstances which made death practically certain." *Id.* The first factor is an objective standard, and the second factor is a subjective standard. *People v. District Court,* 198 Colo. 70, 74, 595 P.2d 1045, 1047 (1979). Premeditation or deliberation is not required. *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965), *cert. denied,* 383 U.S. 953, 86 S.Ct. 1217, 16 L.Ed.2d 215 (1966). Evidence which would be inadmissible at trial may be presented at the preliminary hearing. *Williams,* 628 P.2d at 1014.

 To resolve the question before us, we must determine whether there is sufficient evidence in the record of the preliminary hearing, when viewed in a light most favorable to the prosecution, and making inferences from conflicting evidence in favor of the prosecution, "to induce a person of ordinary prudence and caution to a reasonable belief that the defendant committed the crimes charged." *Id.*

To meet a charge of second degree murder, it must first be shown that the death was "more than merely a probable result of defendant's actions." *Mingo,* 196 Colo. at 318, 584 P.2d at 633. The judge heard the following testimony at the preliminary hearing. Police officers responded to a call of a shooting and arrived at the defendant's home to find the victim in the front room of the house. The victim had been killed by a bullet which had entered through his right armpit, traveled through his body, and lodged in his left hip. The pathologist's finding was that the gunshot wound was the cause of death. A second bullet was found lodged in the ceiling in the same room. A gun with two spent shells and four live rounds was found at the shooting scene; the hammer of the gun was in a cocked position.

The result of the nitrate pattern examination was that the muzzle of the weapon was more than three feet from Vizina's body when the weapon was fired. The result of a gunshot residue test on the victim's hands was negative, "indicating he had not fired a weapon." The result of a gunshot residue test on the defendant was inconclusive. However, the detective testified that "Ms. Fisher did have residue on the back of her left hand" and explained that "[a] person would have to hold that gun in their hand at the time of firing it to have any residue on the back of their hand." A blood alcohol test performed on the victim showed that Vizina had been intoxicated,[6] and the detective testified that the defendant appeared to be "somewhat intoxicated."

During the preliminary hearing, the videotape of Fisher's second statement was entered into evidence and viewed by the county court judge. During this statement, which was about twenty minutes long, the defendant explained that she had gone to the recreational vehicle and brought the weapon in the front room, where she and the victim proceeded to hand it back and forth until suddenly she heard a loud boom and realized that the victim was bleeding. She stated that she did not know what had happened, but that Vizina had repeatedly asked her to kill him. Penington testified about certain discrepancies between Fisher's first and second statements to him.

---

**6.** A test performed on the victim the day after his death revealed his blood alcohol level to be .293.

It can reasonably be inferred from this circumstantial evidence that the defendant did not shoot himself, and the only other person present in the room was Fisher. In *Mingo*, we held:

> Regarding the first factor, *it is obvious that a jury could reasonably conclude that discharging a gun from a distance of three feet creates such a high probability of death that death was practically certain,* not merely a probable result.

*Id.* at 318, 584 P.2d at 634 (emphasis added). Viewing the circumstantial evidence in the light most favorable to the prosecution, and resolving conflicts in testimony in favor of the prosecution, we conclude that these facts support a reasonable belief that Vizina's death was more than merely a probable result of the defendant's actions.

■ The second requirement for second degree murder is that the defendant "was aware of the circumstances which made death practically certain." *Mingo*, 196 Colo. at 318, 584 P.2d at 633. While there was evidence that both the victim and the defendant were intoxicated at the time of the shooting, there is no evidence that Fisher's intoxication rendered her unaware that firing the weapon "made death practically certain." Evidence of self-induced intoxication, by itself, is not sufficient to downgrade second degree murder to reckless manslaughter. *People v. Bartowsheski,* 661 P.2d 235, 243 (Colo.1983) (evidence of self-induced intoxication not admissible to negate the second degree murder culpability element of "knowingly"). The evidence shows that two bullets were fired, supporting the inference that the revolver was fired twice during this incident. We have held that with regard to second degree murder, intent to kill may be inferred from the act itself. *People v. Morant,* 179 Colo. 287, 291, 499 P.2d 1173, 1175 (1972); *see Bishop v. People,* 165 Colo. 423, 429, 439 P.2d 342, 345 (1968). We have also held that use of a deadly weapon is sufficient to allow a jury to infer the culpability element of second degree murder. *Hervey v. People,* 178 Colo. 38, 43, 495 P.2d 204, 207 (1972). The evidence regarding defendant's state of mind need not be direct. The judge or jury may infer an intent to cause the natural and probable consequences of unlawful voluntary acts, knowingly performed. *Mingo,* 196 Colo. at 74, 584 P.2d at 634 (citing *Keller v. People,* 153 Colo. 590, 387 P.2d 421 (1963)). At a preliminary hearing, the court is required to draw all inferences in favor of the prosecution.

In *Mingo,* there was no evidence that the shooting was accidental or inadvertent. 196 Colo. at 74, 584 P.2d at 634. In this case, the only evidence or indication that the shooting was accidental or inadvertent was the defendant's videotaped statement. However, "it is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences which can be drawn from the People's evidence. Judging the merits of the case is, as we have repeatedly held, for the trier of facts at trial." *Holder,* 658 P.2d at 872. Based on appropriate inferences from the evidence preserved in this case, we conclude that for purposes of a probable cause determination there was sufficient evidence at the preliminary hearing to support a reasonable belief that the defendant was aware of the circumstances which made death practically certain.

The trial court's role at a preliminary hearing is to determine whether the evidence is sufficient to support a reasonable belief that the defendant committed the crimes charged; not proof beyond a reasonable doubt. Recognizing that, we conclude that the county court erred as a matter of law in concluding that there was not probable cause for the charge of second degree murder. The district court therefore abused its discretion in denying the prosecution's motion to refile the dismissed charges. We find that these facts do establish probable cause to believe that a crime was committed, and that the defendant committed the crime. We reverse and remand with directions to the district court to grant the prosecution's motion to reinstate the original charges in the district court.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I respectfully dissent to the majority opinion because I believe that there was insufficient evidence for a finding of probable cause on the charge of second-degree murder. Section 18–3–103(1)(a), 8B C.R.S. (1986), provides: "A person commits the crime of murder in the second degree if: (a) He causes the death of a person knowingly, but not after deliberation." In *People v. District Court*, 652 P.2d 582 (Colo. 1982), we stated that two factors must be established to prove second-degree murder. "First, the death must have been more than merely a probable result of the defendant's actions. Second, the defendant must have been aware of the circumstances that made death practically certain. The first is an objective standard; the second, a subjective standard." *Id.* at 586 (citations omitted). Because I do not believe that the prosecution has satisfied the second factor, I would affirm the district court.

With respect to the second factor, the prosecution need not provide direct evidence of the defendant's state of mind since "the defendant's subjective awareness may be inferred from his conduct and surrounding circumstances." *Id.; People v. District Court*, 198 Colo. 70, 74, 595 P.2d 1045, 1048–49 (Colo.1979). A judge or a jury may presume an intent to cause the "natural and probable consequences of ... unlawful voluntary acts, knowingly performed." *People v. Mingo*, 196 Colo. 315, 318, 584 P.2d 632, 634 (1978) (quoting *Keller v. People*, 153 Colo. 590, 387 P.2d 421 (1963)).

In *Mingo*, a struggle ensued between the victim and the defendant's son. From a distance of three feet, the defendant shot the victim in the chest. The defendant admitted shooting the victim and stated that she "still hadn't forgot about him trying to get in the back of my place to try to steal something." *Mingo*, 196 Colo. at 317, 584 P.2d at 633. With respect to the second factor, the court held:

Like intent, subjective awareness of the probability of consequences is a matter which often must be inferred from defendant's conduct and surrounding circumstances. Here there was no evidence or indication that the shooting was accidental or inadvertent. The jury might properly conclude that [the] defendant was aware of the high probability of death as the result of her admittedly deliberate shooting of the victim at a distance of three feet.

*Id.* at 318, 584 P.2d at 634. In this case, the evidence indicated that the gun was shot from a distance of more than three feet from the victim, but did not reflect the outer distance from which the gun might have been shot.

In *People v. District Court*, 198 Colo. 70, 595 P.2d 1045 (Colo.1979), another case involving the review of a preliminary hearing for second-degree murder, we stated that with respect to the second factor enunciated in *Mingo:* "the conduct of the accused— as established by the evidence—demonstrated that he was angry at the deceased; he threatened to 'smash her face in' and used various epithets in voicing his anger before and during the beating." *Id.* at 75, 595 P.2d at 1048. Again, the court found that the beating was not accidental or inadvertent and concluded that "[o]ne who repeatedly strikes another for ten to fifteen minutes and inflicts a massive head injury on his victim can be held to be aware of the possible fatal consequences of his actions."

More recently, we reviewed a trial court's dismissal of attempted second-degree murder. In *People v. District Court*, 652 P.2d 582, 586 (Colo.1982) (*District Court II*), we analyzed the second factor as follows:

Testimony at the preliminary hearing shows that on the morning preceding the shooting the defendant had stated that he intended to use his gun that night. Moreover, the defendant stated sometime after the shooting that "I went to shoot Toby, and the bullet I shot at Toby, got my Cindy." The circumstances surrounding the shooting, including the statements [the defendant] is alleged to have made, are sufficient to establish probable cause that he was aware of the probable fatal consequences of his actions.

In this case, unlike *Mingo* and *District Court II*, there was no evidence presented at the preliminary hearing that the defendant intended to use the gun or deliberately shot the victim. Moreover, the circumstances surrounding the shooting do not reflect that the defendant was aware of the possible fatal consequences of her actions. She admitted that at the request of the defendant, she retrieved the gun from the camper and handed it to the victim. The victim returned the gun to the defendant and the next thing the defendant knew was that the gun made a "loud boom." In my view, the majority extends the decision of *Mingo* and its progeny too far.

Under the majority's analysis, shooting a pistol by itself is sufficient to establish probable cause for second-degree murder. This obliterates any distinction between the intent required for second-degree murder and that required for reckless manslaughter. Section 18–3–104, 8B C.R.S. (1986); *see People v. Padilla,* 638 P.2d 15 (Colo. 1981); *People v. DelGuidice,* 199 Colo. 41, 606 P.2d 840 (1979). In viewing the evidence in the light most favorable to the prosecution, I do not believe the evidence established the defendant was aware that her acts were practically certain to cause the death of the victim. For that reason, probable cause for second-degree murder has not been established.[1] Accordingly, I would affirm the district court's affirmance of the county court.

---

1. The district court, in my view, did not abuse its discretion when it made the following oral order:

> Having reviewed all of the evidence, the transcript that was submitted for the preliminary hearing and the tape ... I do agree with [the county court judge], that there is not probable cause to believe that the defendant ... was aware that her actions were practically certain to cause the result that [they] did, and, therefore, the motion to file the charge directly in district court is denied.